Citation Nr: 1443684 
Decision Date: 09/30/14 Archive Date: 10/06/14

DOCKET NO. 11-09 666 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Milwaukee, Wisconsin


THE ISSUES

1. Entitlement to service connection for a sleep disorder, to include as secondary to service-connected residuals of a lower back injury with recurrent back strain. 

2. Whether the rating reduction from 40 to 10 percent for residuals of a lower back condition, to include residuals of injury with recurrent back strain was proper, to include entitlement to an increased rating.


REPRESENTATION

Appellant represented by: Wisconsin Department of Veterans Affairs


WITNESS AT HEARING ON APPEAL

The Veteran and his wife



ATTORNEY FOR THE BOARD

J. Turner, Associate Counsel


INTRODUCTION

The Veteran served on active duty from July 1980 to July 1984.

These matters come before the Board of Veterans' Appeals (Board) on appeal from August 2009 and March 2014 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Milwaukee, Wisconsin, which denied entitlement to service connection for a sleep disorder, and reduced the Veteran's rating for a lower back condition, respectively.

The Board remanded the claim for service connection in January 2014 to afford the Veteran a hearing before a decision review officer (DRO). The Veteran testified before a DRO at an April 2014 hearing at the RO. A transcript has been associated with the file. The case has now been returned to the Board.


FINDINGS OF FACT

1. The preponderance of the evidence is against a finding that the Veteran has a current sleep disorder that had its onset in service or is otherwise related to service, or that is related to or aggravated by the service-connected lower back condition.

2. In a January 1999 rating decision, the RO granted an increased rating of 40 percent for the service-connected lower back condition, effective March 24, 1998.

3. The 40 percent rating for the Veteran's service-connected lower back condition was in effect for more than five years at the time it was reduced in June 2014.

4. Material improvement in the Veteran's low back condition, which is reasonably certain to be maintained under the ordinary conditions of life, is demonstrated by the evidence of record.

5. The Veteran's low back disability is not manifested by forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; or, the combined range of motion of the thoracolumbar spine not greater than 120 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis; the record does not show bed rest and treatment prescribed by a physician or credible evidence of compensable neurological impairment associated with the back disability. 


CONCLUSIONS OF LAW

1. The criteria for service connection for a sleep disorder, to include as secondary to service-connected residuals of a lower back injury with recurrent back strain have not been met. 38 U.S.C.A. §§ 1101, 1110, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.303, 3.304 (2013).

2. The reduction of the assigned 40 percent rating for the Veteran's low back condition to 10 percent was proper. 38 U.S.C.A. §§ 1155, 5107(b) (West 2002); 38 C.F.R. §§ 3.105(e), 3.344, 4.3, 4.7, 4.71a, Diagnostic Code 5295-5292 (2002), Diagnostic Code 5299-5237 (2013).

3. The criteria for a rating in excess of 10 percent for service connected low back disability have not been met. 38 U.S.C.A. §§ 1155, 5103A, 5107 (West 2002); 38 C.F.R. §§ 3.159, 4.3, 4.7, 4.71a, Diagnostic Code 5237 (2013).





REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Procedural Duties

VA has met all statutory and regulatory notice and duty to assist provisions as to the Veteran's claims for entitlement to service connection and the propriety of the rating reduction. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2002 & Supp. 2013); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326 (2013).

A. Duty to Notify

When VA receives a complete or substantially complete application for benefits, it is required to notify the claimant and his representative, if any, of any information and medical or lay evidence that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b). VA must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. Compliance with the first element requires notice of the five service connection elements: (1) veteran status; (2) existence of a disability; (3) a connection between the veteran's service and the disability; (4) degree of disability; and (5) effective date. See 38 U.S.C.A. § 5103(a); see also Dingess v. Nicholson, 19 Vet. App. 473, 490 (2006). 

In this case, the issues on appeal are entitlement to service connection for a sleep disorder, to include as secondary to residuals of a low back injury, and the propriety of a reduction in evaluation following an examination assessing the current level of severity of the Veteran's service-connected lower back condition. As the reduction issue stems from the Veteran's March 2013 claim for an increased rating, the issue of entitlement to an increased rating is before the Board as well. A December 2009 letter fully satisfied the duty to notify provisions prior to initial adjudication of the Veteran's claim for entitlement to service connection for a sleep disorder in February 2010. A May 2013 VCAA letter notified the Veteran of the type of evidence necessary to substantiate the increased rating claim. A December 2013 letter advised the Veteran of the proposal to reduce the evaluation assigned to the residuals of the low back injury, and provided the appropriate due process. The case was last adjudicated in March 2014. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b)(1), 3.105(e). 

B. Duty to Assist

The Board also concludes VA's duty to assist in obtaining records has been satisfied. The Veteran's service treatment records (STRs) and VA medical records are in the file. Records from SSA were associated with the claims file. The Veteran has at no time referenced outstanding records that he wanted VA to obtain or that he felt were relevant to the claims.

The duty to assist also includes providing a medical examination or obtaining a medical opinion when such is necessary to make a decision on the claim, as defined by law. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c); McLendon v. Nicholson, 20 Vet. App. 79, 81-82 (2006). If VA provides a claimant with an examination in a service connection claim, the examination must be adequate. Mitchell v. Shinseki, 25 Vet. App. 32, 43 (2011). The probative value of a medical opinion is derived from a factually accurate, fully articulated, and soundly reasoned opinion. Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 300 (2008).

The Veteran was afforded July and August 2009 medical examinations to obtain an opinion as to whether his claimed sleep disorder was the result of his service-connected residuals of a low back condition. The Veteran was provided with VA examinations to determine the severity of his lower back condition in May 2013 and June 2014. These examinations were rendered by medical professionals following a thorough examination and interview of the Veteran and review of the claims file. The examiners obtained an accurate history and listened to the Veteran's assertions. The examiner laid a factual foundation and reasoned basis for the conclusions that were reached. Therefore, the Board finds that the examinations are adequate. See Nieves-Rodriguez, 22 Vet. App. at 300. 



II. Service Connection 

The Veteran contends that he has a sleep disorder as a result of his lower back condition. For the reasons that follow, the Board finds that the Veteran does not currently have a credible diagnosis of a sleep disorder that is related to or aggravated by his lower back condition. As such, service connection is not warranted.

Service connection may be established for a disability resulting from disease or injury incurred by active service. 38 U.S.C.A. § 1110, 1131; 38 C.F.R. § 3.303(a). To establish entitlement to service-connected compensation benefits, a Veteran must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred during service. Shedden v. Prinicipi, 381 F.3d 1163, 1167 (Fed. Cir 2004).

Service connection may also be established on a secondary basis for disability which is proximately due to, or the result of, a service connected disease or injury. 38 C.F.R. § 3.310(a) (2013). Secondary service connection may also be established for a disorder which is aggravated by a service-connected disability; compensation may be provided for the degree of disability (but only that degree) over and above the degree of disability existing prior to the aggravation. 38 C.F.R. § 3.310(c). Establishing service connection on a secondary basis essentially requires evidence sufficient to show (1) that a current disability exists and (2) that the current disability was either (a) caused by or (b) aggravated by a service connected disability. Id.

The Veteran's STRs are silent as to complaints of any sleep disturbance. The Veteran's report of medical history, completed by the Veteran in July 1984, at the time of separation from service, indicates the Veteran never experienced frequent trouble sleeping. The accompanying medical examination performed in July 1984 is silent for any indication of sleep disturbance.

In his initial claim for benefits, received in March 2009, the Veteran reported that he suffered from a sleep disorder secondary to his service-connected lower back condition, stating that he slept only 4 hours a night due to pain. 

VA treatment records dated October 2002 showed the Veteran underwent a sleep study in March 2002, which indicated very poor sleep quality with moderately severe obstructive sleep apnea/hypopnea syndrome. The study indicated that there was substantial improvement in sleep efficiency, continuity and resolution of abnormal breathing events with a CPAP machine. The Veteran stated that he had a history of poor sleeping, frequent waking, snoring, and feeling fatigued during the day. He stated that he felt the CPAP machine helped somewhat, although he reported sleeping only about 4 hours per night. He noted he was able to fall asleep with the CPAP machine, but woke due to shoulder pain. 

VA treatment records showed the Veteran had a history of sleep apnea. In treatment records dated September 2008, the Veteran stated that he had excessive shoulder pain and had not been able to sleep for the past several weeks. Records dated November 2008 showed the Veteran reported sleeping difficulties, stating that he slept less than 4 hours at night and that the pain kept him awake at night, and that he could not find a comfortable position in which to lie.

In July 2009, the Veteran underwent a VA examination. The Veteran reported that he did not know if "it was his back," but stated that he was sleeping only 2 to 4 hours per night. He stated that he had not used an alarm clock in 20 years, and noted that he would work 2 jobs because he could not sleep, working for 12 to 18 hours per day, and sometimes not sleeping for 2 to 3 days at a time.

He reported difficulty falling asleep because he could not get comfortable, and noted that he took 2 pills every 4 hours for his back, including before he went to bed. He also stated that he took a hot shower and walked around the house or played on the computer. He stated that his back and neck were the most uncomfortable, but also endorsed discomfort in his hands, feet, knees, and calves. The Veteran was unable to additionally define his discomfort other than to state that it was uncomfortable. He denied attempting to sleep on a different bed or chair. The examination report noted the Veteran had been diagnosed with OSA but had not used the CPAP for the past year. The Veteran stated that he did not nap during the day, and that he got tired but could not sleep because he was restless. The Veteran stated that he felt he could not sleep properly due to pain.

The examiner stated that because the Veteran was able to sleep for 6 hours, it was difficult to determine if a sleep disorder actually existed. The examiner noted the lack of use of the CPAP machine to help sleep, and the Veteran's significant history of substance abuse including ongoing alcohol use, which can interfere with sleep. The examiner further noted the Veteran's extensive muscle and joint pain which was followed by rheumatology.

The examiner concluded that the Veteran's reported sleep disorder was subjective, multifactorial but not caused or aggravated by back strain alone. The examiner also stated that the diagnosed sleep apnea was not caused by or aggravated by subjective reports of back pain. With the vague description of sleep disturbance and lack of radiological evidence of lumbar spine disease, the examiner was unable to determine to what extent the back pain could be contributing to his reported intermittent ability to sleep without resorting to speculation.

In an August 2009 VA examination, the Veteran reported pain in his shoulders, back, and knees. The Veteran stated that he was tired a lot. He noted that he tried to go to sleep at 9 or 10 in the evening, and then woke at 1. He stated that he would then attempt to go back to sleep and would wake at 4 in the morning. He clarified that once he laid down in the evening that he had difficulty finding a comfortable sleeping position, and stated that he would either fall asleep or would get up to play on the computer. He stated that when he fell asleep, that he would wake at 5 AM in pain, and could not get out of bed or stand up straight. He denied the recommended use of CPAP for OSA. With regard to a sleep disorder caused by the Veteran's lower back condition, the examiner determined that it was impossible to determine without resorting to mere speculation whether a sleep disorder truly exists, or the cause of any sleep disorder due to the fact that the sleep condition could be caused by pain, sleep apnea (non-compliant with treatment) or alcohol abuse.

In an April 2014 DRO hearing, the Veteran testified that he hurt his back, neck and leg in a car accident and then started to experience sleep disturbances due to pain. The Veteran stated that he slept up to 4 hours a night, but would sometimes go without sleep for 2 to 3 days. He also noted that although he used to self-medicate with alcohol to manage his pain, that he had been sober for 3 years. He stated that although he occasionally used his CPAP machine, that he would find it difficult to use because he could not get into a comfortable position due to his back pain.

The Board finds that the preponderance of the evidence is against a finding of a current credible diagnosis of a sleep condition that is either directly related to service or secondarily related to a service-connected low back condition. Though there is a diagnosis of OSA, there is no medical evidence that this condition is either related to service or the Veteran's low back condition. The Veteran's contentions center on sleeping difficulties, which he feels are related to discomfort caused by his service-connected low back disability. However, the Veteran's subjective complaints of difficulty sleeping have not resulted in a diagnosis of a sleep disorder associated with his low back disability at either his July or August 2009 VA examinations. The Veteran is competent to report on sleeping difficulties but he is not competent to diagnose any underlying disorder as this involves a medically complex question because sleep problems can have many causes. Thus, the weight of the evidence is not at least in relative equipoise. Again, the July and August 2009 VA examiners found it was impossible to say without resort to speculation whether the Veteran has a clearly diagnosable sleep disorder, and explained that it could not be determined whether the Veteran's reported sleep disturbances were caused or aggravated by his low back condition given the numerous potential causes of sleep disturbance in the Veteran's life. An award of VA benefits may not be based on resort to speculation or remote possibility. See 38 C.F.R. § 3.102; see also Bostain v. West, 11 Vet. App. 124, 127 (1998). As such, the Board finds that the preponderance of the evidence is against the Veteran's claim. Consequently, the benefit-of-the-doubt rule does not apply, and the claim must be denied. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102.



III. Rating Reduction

The Veteran has appealed the RO's March 2014 decision to reduce the disability rating of the residuals of his low back injury from 40 percent to 10 percent, effective June 1, 2014. He contends that the reduction was improper, and that the prior rating should be restored.

Disability evaluations are determined by the application of VA's Schedule for Rating Disabilities (Rating Schedule), 38 C.F.R. Part 4. The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and the residual conditions in civil occupations. 38 U.S.C.A. § 1155; 38 C.F.R. §§ 3.321(a), 4.1 (2013). 

The basis of disability evaluations is the ability of the body as a whole to function under the ordinary conditions of daily life, including employment. 38 C.F.R. 
§ 4.10. Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

38 C.F.R. § 3.344 provides that rating agencies will handle cases affected by change of medical findings or diagnosis so as to produce the greatest degree of stability of disability evaluations consistent with the laws and VA regulations governing disability compensation and pension. It is essential that the entire record of examination and the medical-industrial history be reviewed to ascertain whether the recent examination is full and complete, including all special examinations indicated as a result of general examination and the entire case history. Examinations that are less thorough than those on which payments were originally based will not be used as a basis for reduction. Ratings for diseases subject to temporary or episodic improvement will not be reduced on the basis of any one examination, except in those instances where all of the evidence of record clearly warrants the conclusion that sustained improvement has been demonstrated. Moreover, where material improvement in the physical or mental condition is clearly reflected, the rating agency will consider whether the evidence makes it reasonably certain that the improvement will be maintained under the ordinary conditions of life. 38 C.F.R. § 3.344(a) (2013).

The provisions of 38 C.F.R. § 3.344(c) specify that the above considerations are required for ratings which have continued for long periods at the same level (five years or more), and that they do not apply to disabilities which have not become stabilized and are likely to improve. Therefore, reexaminations disclosing improvement, physical or mental, in these disabilities will warrant a reduction in rating. 38 C.F.R. § 3.344 (2013).

A January 1999 rating decision increased the rating for the Veteran's low back condition from 10 percent to 40 percent, effective March 24, 1998. By rating action December 2013, the RO proposed to reduce the evaluation to 10 percent. In the March 2014 rating decision on appeal, the RO reduced the evaluation to 10 percent, effective June 1, 2014.

As an initial matter, the Board notes that because the 40 percent rating for a low back condition was in effect for a period exceeding five years (from 
March 24, 1998 through June 1, 2014), the provisions of 38 C.F.R. § 3.344(a) and (b) regarding stabilization of disability ratings apply. See 38 C.F.R. § 3.344 (2013).

The Board also notes that appropriate due process procedures were followed with respect to the rating reduction. Specifically, in a December 2013 letter, the Veteran was informed of the proposed reduction for the low back condition and of his right to submit evidence showing that such change should not be made. Thereafter, a March 2013 rating decision reduced the award prospectively, effective 
June 1, 2014. Thus, the due process procedures set forth in 38 C.F.R. § 3.105(e) were met.

Pursuant to a July 1989 rating decision, service connection for a low back condition was established, and a 10 percent rating was assigned under Diagnostic Code 5295, effective April 3, 1989. After the Veteran filed a claim for increase, the Veteran's evaluation for his low back condition was increased from 10 percent to 40 percent. Based on a September 1998 VA examination, the RO assigned a 40 percent rating under Diagnostic Code 5295-5292, effective March 24, 1998. At that examination, the examiner diagnosed myofascial pain on the upper and lower back, and restricted range of motion of the cervical and lumbosacral spine, with degenerative disease of the lumbosacral spine. Range of motion testing showed 35 degrees flexion, 10 degrees extension, 15 degrees left lateral bending, and 20 degrees right lateral flexion. There was no specific muscle spasm noted. The examiner found no additional loss of motion on repetitive testing. There was tenderness including a number of tender points through the left upper trapezius and left rhomboid lower trapezius muscle region. There was also tenderness to palpation through the mid-lumbar spine centrally then to the left lumbosacral paraspinal muscle. The RO assigned a 40 percent rating based on a finding of "severe" loss of range of motion. 

Thereafter, the Veteran underwent additional VA examinations in September 1999 and July 2000. In September 2004, on VA examination the Veteran was able to walk from the waiting room to the examining room, a distance of 120 feet without significant low back difficulty. He did have some problems getting up from a chair or bending over. There was minimal percussion and tenderness over the left lumbar sacral area. He was able to flex to 80 degrees, side bend to 30 degrees and rotate his spine 40 degrees bilaterally without significant pain. He was able to extend to 10 degrees. Deep tendon reflexes of the legs were intact. There was no sensory deprivation. He was able to get on and off the examining table without significant difficulty or pain. X-rays of the lumbar spine were normal. The examiner provided diagnoses of the following: low back strain incurred during active military service with probable radiculopathy of the left leg at that time; recurrent low back strain since active military duty and currently; polyarthritic syndrome unrelated to low back injury; and no evidence of polyarthritic involvement of the lumbosacral spine.

At the May 2009 VA examination, the Veteran complained of pain that throbbed and was sometimes sharp. It was constant and varied in intensity. He complained of having pain more in the neck than the back, and joint pain in the hands, feet, ankles, and knees. He was not in therapy for this. Physical examination showed reported tenderness of palpation of the vertebrae from T11-L4. The Veteran's gait was steady, and he brought no assistive device. He performed tandem gait, and rose up on his heels and toes. He claimed that every requested activity aggravated his left low back pain. Range of motion testing showed forward flexion to 60 degrees, and with encouragement, advanced to 80 degrees. Repeated testing showed forward flexion to 50 and 70 degrees. Extension was to 25 degrees the first time, and to 40 and 45 degrees after repeated testing. Right lateral flexion was 20, 25, and 30
degrees, respectfully. Left lateral flexion was consistently 40-45 degrees. Rotation was 40 degrees on first attempt, but progressive guarding allowed him to achieve 30
degrees on the third attempt. The examiner was unable to determine to what extent the Veteran might be additionally limited by pain, fatigue, lack of endurance, etc. without resorting to mere speculation. Straight leg raise was limited to 50 to 60 degrees bilaterally, with report of low back pain, but no radicular symptoms. Deep tendon reflexes were +1 for the upper extremities and less than 1 for the legs. Sensation to light touch was intact, as was Babinski testing. Significantly, the examiner noted that range of motion appeared "intentionally limited"; she did not appreciate weakness or incoordination. X-ray testing showed no evidence of arthritis or disc disease.

Following a claim for an increased rating for his back and entitlement to TDIU based on his back disability filed in March 2013, the Veteran underwent a VA examination in May 2013. Range of motion testing showed 80 degrees flexion, 30 degrees or greater extension, and 30 degrees of bilateral lateral rotation with no objective evidence of painful motion. The Veteran also had 30 degrees bilateral lateral flexion, with pain on maximum flexion. The examiner noted there was no localized tenderness or pain to palpation for joints and/or soft tissue of the thoracolumbar spine. Additionally, the examiner noted there was no guarding or muscle spasm of the thoracolumbar spine. Examination showed normal bilateral reflexes, normal sensory examination, and negative bilateral straight leg test. There was no evidence of radiculopathy, and the examiner stated there was no intervertebral disc syndrome. The examiner noted that the findings of degenerative disc disease on the 2011 MRI were due to the more recent car accident or normal aging. The examiner observed that x-rays in previous years were normal. The examiner maintained that any loss of range of motion, along with other symptoms, was more likely as not due to this MVA or normal aging. The examiner noted that with heavy labor, the recurrent back strain could flare-up and have increased pain, but not necessarily with light physical, or sedentary, labor.

After the March 2014 rating decision finalized the reduction in the Veteran's evaluation, the Veteran filed a timely appeal. Thereafter, a VA examination was conducted in June 2014. The examiner noted a diagnosis of lower back injury with recurrent back strain, and degenerative disc disease of the lumbar spine. At the examination, range of motion testing showed 10 degrees flexion, 15 degrees extension, and 15 degrees of bilateral lateral rotation with no objective evidence of painful motion. The Veteran also had 10 degrees bilateral lateral flexion, with pain on maximum flexion. However, the examiner determined that these results were invalid due to lack of effort on the Veteran's part, and noted that elevated body mass index also played a role. The examiner noted that though the Veteran reported that his condition had worsened, his clinical documentation did not support that conclusion. Further, the examiner determined there was no clinical explanation for the drastic change in range of motion from the May 2013 VA examination and the present examination. 

At his April 2014 DRO hearing, the Veteran testified that he felt his low back condition was presently as severe as before the rating reduction because when he woke up, it was hard to get out of bed at night and he sometimes had to pull himself out of bed and would sometimes have to take a break from household chores. He noted that he could not do the stuff he usually did and that it seemed to be getting worse because whenever he did anything, he was then "down" for a couple of days. He endorsed pain and stiffness.

Upon review of the record, the Board concludes that the reduction in the evaluation of the Veteran's low back condition was proper. 

For VA compensation purposes, normal forward flexion of the thoracolumbar spine is 0 to 90 degrees, extension is 0 to 30 degrees, left and right lateral flexion are 0 to 30 degrees, and left and right lateral rotation are 0 to 30 degrees. 38 C.F.R. § 4.71a, Plate V, General Rating Formula for Diseases and Injuries of the Spine, Note 2 (2013).

Prior to September 26, 2003, a 10 percent rating was warranted for slight limitation of motion of the lumbar spine, a 20 percent rating was warranted for moderate limitation of motion of the lumbar spine, and a 40 percent rating was warranted for severe limitation of motion. 38 C.F.R. § 4.71a, Diagnostic Code 5292 (2002).

Prior to September 26, 2003, a 10 percent rating was warranted for lumbosacral strain with characteristic pain on motion. A 20 percent rating was warranted for lumbosacral strain with muscle spasm on extreme forward bending, loss of lateral spine motion, unilateral, in standing position. A 40 percent rating was warranted for lumbosacral strain that was severe, with listing of the whole spine to the opposite side, a positive Goldthwaite's sign, marked limitation of forward bending in a standing position, loss of lateral motion with osteoarthritic changes, and narrowing or irregularity of the joint space; a 40 percent evaluation was also warranted when only some of these symptoms were present if there was also abnormal mobility on forced motion. 38 C.F.R. § 4.71a, Diagnostic Code 5295 (2002).

As noted above, the relevant rating criteria to the Veteran's low back condition was amended in September 26, 2003. VA's Office of General Counsel has determined that amended rating criteria can be applied only for periods from and after the effective date of the regulatory change. The Veteran's claim for an increased rating and the reduction occurred after September 26, 2003. 

The Board will address the rating disabilities of the spine in effect prior to September 26, 2003 but only for purposes of determining whether the Veteran's disability has demonstrated sustained improvement.

As for motion, the words "slight," "moderate," "severe," and "marked" were not defined in the VA Schedule for Rating Disabilities. Guidance is obtained from the amended regulations as the current definition of normal range of motion for the spine is based on medical guidelines in existence since 1984. Normal forward flexion of the thoracolumbar spine is 0 to 90 degrees, extension is 0 to 30 degrees, left and right lateral flexion is 0 to 30 degrees, and left and right lateral rotation is 0 to 30 degrees. See 38 C.F.R. § 4.71a, General Rating Formula for Diseases and Injuries of the Spine, Note (2) (2013). Based upon the May 2013 and June 2014 examinations, the Board concludes that the Veteran's limitation of motion falls at most within the slight range, even when taking into account any additional loss of function due to pain and other factors. The Board finds that overall, there is at most, minimal limitation of lumbar motion. The Veteran had objective evidence of pain only at 30 degrees bilateral lateral flexion at the March 2013 examination, and had no tenderness or muscle spasm. Although the results of the June 2014 examination indicated more severe limitation of lumbar motion, the Board does not find these results to be credible, as the VA examiner deemed them invalid due to lack of effort. Thus, under the qualitative criteria for evaluating limitation of motion of the low back, the Board finds that the current level of disability shown on VA examination is not commensurate with a 20 percent or 40 percent rating under former Diagnostic Code 5292 which suggests actual improvement of the disability as opposed to a mere difference in application of revised rating criteria to the disability. 

Similarly, when rated under the old diagnostic code for lumbosacral strain, the Veteran's low back condition did not satisfy the qualitative criteria for a rating higher than 10 percent. Under the old schedular criteria of Diagnostic Code 5295, a 10 percent rating was warranted for lumbosacral strain with characteristic pain on motion. A higher rating of 20 percent was not warranted unless there was muscle spasm on extreme forward bending and unilateral loss of lateral spine motion in the standing position. 38 C.F.R. § 4.71a, Diagnostic Code 5295 (2002). A 40 percent rating was assigned for severe low back strain. Id. In this case, there was no evidence of muscle spasm, and unilateral loss of lateral spine motion was not shown, and the findings were not described as severe. Thus, the Board finds that the level of disability shown on VA examination is not commensurate with a rating of 20 percent or 40 percent under 5295, which suggests actual improvement of the disability as opposed to a mere difference in application of revised rating criteria to the disability. Therefore, the current severity of the Veteran's disability when considering the diagnostic criteria used to justify the 40 percent rating is not the same as it was back then. 

The criteria for disabilities of the spine, in effect since September 26, 2003, also do not warrant a disability evaluation in excess of 10 percent. At the time of the reduction in the Veteran's disability evaluation on June 1, 2014, the Veteran was rated under Diagnostic Code 5299-5237. The hyphenated diagnostic code in this case indicates that an unlisted musculoskeletal disability, under Diagnostic Code 5299, was the service-connected disability, and lumbosacral strain, under Diagnostic Code 5237, was a residual condition. This code is rated under the General Rating Formula for Diseases and Injuries of the Spine. Under this formula, with or without symptoms such as pain (whether or not it radiates), stiffness, or aching in the area of the spine affected by residuals of injury or disease, a 10 percent rating is assigned for forward flexion of the thoracolumbar spine greater than 60 degrees but not greater than 85 degrees; or, combined range of motion of the thoracolumbar spine greater than 120 degrees but not greater than 235 degrees; or, muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour. A 20 percent rating is assigned for forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; or, the combined range of motion of the thoracolumbar spine not greater than 120 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. 38 C.F.R. 4.71a.

The objective findings of record do not reflect evidence of forward flexion of the thoracolumbar spine to 60 degrees or less; combined range of motion of the thoracolumbar spine to 120 degrees or less; or muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. 38 C.F.R. § 4.71a, Diagnostic Code 5237 (2013). At the May 2013 examination, the Veteran's forward flexion of the thoracolumbar spine was shown to be 80 degrees, and his combined range of motion was shown to be 230 degrees. The VA examiner noted the range of motion was not additionally limited by pain, fatigue, weakness, incoordination, or lack of endurance after three repetitions. There was no finding of muscle spasm. The Veteran denied flare-ups. Thus, even considering the Veteran's subjective complaints of pain, the medical evidence of record does not support any additional limitation of motion in response to repetitive motion that would support an evaluation in excess of the 10 percent assigned for this period. See DeLuca v. Brown, 8 Vet. App. 202 (1995); 38 C.F.R. § 4.40 (2012); see also 38 C.F.R. §§ 4.45, 4.59 (2013). Pain alone does not warrant a higher rating. See Mitchell v. Shinseki, 25 Vet. App. 32 (Aug. 23, 2011) (holding that pain alone does not constitute functional loss, but is just one fact to be considered when evaluating functional impairment. The Court agreed that pain alone as a basis for a higher rating would produce such "absurd results" as for example where a claimant who experiences very slight pain throughout the range of motion of the knee would receive a 50% disability rating under DC 5261 and a 30% disability rating under DC 5260, whereas a claimant who experiences actual limitation of flexion to 30 degrees and limitation of extension to 20 degrees would only receive disability ratings of 20% and 30% respectively)]. Also, the June 2014 examination findings are not credible based on the comments made by the examiner. Lastly, as noted above, there is no evidence of intervertebral disc syndrome, thus, application of Diagnostic Code 5243 is not warranted. In any event, the record fails to show bed rest and treatment prescribed by a physician. Consideration of a separate diagnostic code for associated objective neurological abnormalities is, likewise, not warranted as there was no evidence of neurological abnormality on examination. 38 C.F.R. § 4.71a, General Rating Formula for Diseases and Injuries of the Spine, Note (1) (2013). The Board finds the examiners' objective opinions more probative than the Veteran's subjective complaints because the examiners are medical experts in evaluating spine disabilities and so are entitled to such deference in the absence of any evidence calling into question their ability and qualifications to examine spine disabilities. 

The reduction in this case was initiated following a VA examination which was as thorough, if not more so, as the one upon which the 40 percent evaluation was assigned. As improvement was clearly shown since the award of 40 percent, the reduction was proper. See 38 C.F.R. § 3.344(a).

In light of the evidence above, the Board finds that the Veteran's lumbar spine disability with limitation of motion has improved since the 40 percent evaluation was assigned. The May 2013 findings show an improvement has actually occurred and reflects an improvement in the Veteran's ability to function under the ordinary conditions of life and work. The May 2013 findings, including range of motion testing, and the June 2014 comments regarding lack of effort demonstrated are similar to the May 2009 VA examination range of motion findings and comments in which the examiner indicated that the Veteran "appeared to be intentionally limit[ing] his range of motion." This period spans several years so the Board is persuaded that sustained improvement has occurred under the ordinary conditions of life. Thus, there is no credible evidence that shows the Veteran's disability is of the same level of severity as it was when the 40 percent disability rating was assigned. Appropriate due process procedures were followed, and the reduction was based upon more than one examination. Therefore, the reduction from 40 percent to 10 percent effective June 1, 2014, was proper, and the appeal is denied. In so finding, it follows that for the same reasons, the Board finds that the Veteran is not entitled to a rating in excess of 10 percent for his low back disability during any portion of the appeal period. 

The Board has also considered whether the Veteran's low back condition presented an exceptional or unusual disability picture as to render impractical the application of the regular schedular standards such that referral to the appropriate officials for consideration of an extraschedular rating is warranted. See 38 C.F.R. § 3.321(b)(1) (2013); Bagwell v. Brown, 9 Vet. App. 337, 338-39 (1996). The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. See Fisher v. Principi, 4 Vet. App. 57, 60 (1993) ("[R]ating schedule will apply unless there are 'exceptional or unusual' factors which render application of the schedule impractical."). Here, the rating criteria reasonably described the Veteran's disability level and symptomatology during the relevant period, including the Veteran's complaints of pain and stiffness, and provide for higher ratings for additional or more severe symptomatology than is shown by the evidence. The Veteran has not described any exceptional or unusual features associated with his disability. Thus, his disability picture was contemplated by the rating schedule, and the assigned schedular evaluations were, therefore, adequate. See Thun v. Peake, 22 Vet. App. 111, 115 (2008). As the Board finds that the Veteran's disability picture is contemplated by the rating schedule, the inquiry ends and the Board need not consider whether the disability picture exhibits other related factors such as marked interference with employment and frequent periods of hospitalization. Accordingly, referral for consideration of an extra-schedular rating is not warranted.

The Board notes that under Johnson v. McDonald, 2013-7104, 2014 WL 3562218 (Fed. Cir. Aug. 6, 2014), a Veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. However, in this case, after applying the benefit of the doubt under of Mittleider v. West, 11 Vet. App. 181 (1998), there are no additional service-connected disabilities that have not been attributed to a specific service-connected condition. Accordingly, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple conditions. 

Finally, the Board also recognizes that the Court of Appeals for Veterans Claims has clarified that a claim for a total disability rating based on individual unemployability (TDIU) due to service-connected disabilities exists as part of a claim for an increase (whether in an original claim or as part of a claim for increased rating). Rice v. Shinseki, 22 Vet. App. 447 (2009). A TDIU claim is considered reasonably raised when a veteran submits medical evidence of a disability, makes a claim for the highest rating possible, and submits evidence of service-connected unemployability. See Roberson v. Principi, 251 F.3d 1378, 1384 (Fed. Cir. 2001). In Locklear v. Shinseki, the Court distinguished the instant case from Rice and recognized that VA's Secretary specifically separated the adjudication of the schedular disability rating from the adjudication of entitlement to TDIU. 24 Vet. App. 311, 315 (2011). The Court in Locklear held that "[b]ifurcation of a claim generally is within the Secretary's discretion." As noted above, at the same time the Veteran filed his claim for an increased rating, the Veteran also indicated that he was seeking entitlement to TDIU based on his back disability. See March 2013 claim. In a December 2013 letter, the RO advised the Veteran that his claim for TDIU was denied because the Veteran failed to return VA Form 21-8940 which contains information necessary to substantiate the Veteran's claim. The Veteran did not appeal. The Board finds that no further action on the part of the Board is warranted on this matter. 

In reaching the conclusion above, the Board has considered the applicability of the benefit of the doubt doctrine. However, as the preponderance of the evidence is against the Veteran's claim, that doctrine is not applicable in the instant appeal. See 38 U.S.C.A. § 5107(b); Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001); Gilbert v. Derwinski, 1 Vet. App. 49, 55-57 (1990).


ORDER

Service connection for a sleep disorder, to include as secondary to service-connected residuals of a lower back injury with recurrent back strain is denied.

The reduction from 40 percent to 10 percent for a lower back condition, to include residuals of injury with recurrent back strain, was proper.

Entitlement to a rating in excess of 10 percent for a lower back condition, to include residuals of injury with recurrent back strain is denied. 



____________________________________________
TANYA SMITH
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs