http://www.va.gov/vetapp16/Files5/1639945.txt

Citation Nr: 1639945 
Decision Date: 09/30/16 Archive Date: 10/13/16

DOCKET NO. 14-11 603 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Oakland, California

THE ISSUE

Entitlement to a rating in excess of 70 percent for posttraumatic stress disorder (PTSD) for the period from June 14, 2010 to April 6, 2016.

REPRESENTATION

Veteran represented by: California Department of Veterans Affairs

ATTORNEY FOR THE BOARD

Jeremy J. Olsen, Associate Counsel

INTRODUCTION

The Veteran served on active duty in the U.S. Army from July 2002 to July 2005. 

This matter comes to the Board of Veterans' Appeals (Board) on appeal from an April 2011 rating decision issued by the Department of Veterans Affairs (VA) Regional Offices (RO) in Oakland, California, which granted service connection for PTSD, effective June 14, 2010, and assigned an initial 50 percent disability rating. 

In a May 2016 rating decision, the RO granted an initial evaluation of 70 percent for PTSD, effective June 14, 2010 and a 100 percent evaluation, effective April 6, 2016. Although the 100 percent evaluation is a complete grant of the benefits sought on appeal, the grant of 70 percent from June 14, 2010 to April 6, 2016 does not represent a total grant of such benefits, and the claim for increase for that period remains on appeal. See AB v. Brown, 6 Vet. App. 35, 39 (1993).
 
This appeal was processed utilizing the Veterans Benefits Management System (VBMS) and Virtual VA paperless, electronic claims processing systems. 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2015). 38 U.S.C.A. § 7107(a)(2) (West 2014).

FINDING OF FACT

Resolving all doubt in favor of the Veteran, from June 14, 2010 to April 6, 2016, the Veteran experienced impairment in thought processes, persistent delusions, grossly inappropriate behavior, was a persistent danger to others, was intermittently unable to perform activities of daily living, and was at times disoriented to time or place, all due to his service-connected PTSD. 

CONCLUSION OF LAW

For the period from June 14, 2010 to April 6, 2016 the criteria for a 100 percent rating for PTSD are met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. 
§§ 3.102, 3.321, 4.3, 4.7, 4.130, Diagnostic Code 9411 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSION

VA's Duties to Notify and Assist

With respect to the Veteran's claim decided herein, the Board finds that VA has met all statutory and regulatory notice and duty to assist provisions. See 38 U.S.C.A. 
§§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326 (2015); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015).

Analysis

Background

As noted above, effective April 6, 2016, the Veteran was awarded a 100 percent disability rating for his service-connected PTSD. The Veteran has disagreed with respect to the propriety of the date of the grant. He asserts that the effective date for the 100 percent rating should be June 14, 2010, the date he was originally granted service connection for PTSD. He claims that his PTSD, for the period from June 14, 2010 to April 6, 2016, is more severe than is reflected by the 70 percent rating.

Laws and Regulations

Disability evaluations are determined by evaluating the extent to which a Veteran's service-connected disability adversely affects his ability to function under the ordinary conditions of daily life, including employment, by comparing his symptomatology with the criteria set forth in the Schedule for Rating Disabilities. 38 U.S.C.A. § 1155; 38 C.F.R. §§ 4.1, 4.2, 4.10.

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise the lower rating will be assigned. 38 C.F.R. 
§ 4.7. All benefit of the doubt will be resolved in the Veteran's favor. 38 C.F.R. § 4.3. 
In order to evaluate the level of disability and any changes in condition, it is necessary to consider the complete medical history of the Veteran's condition. Schafrath v. Derwinski, 1 Vet. App. 589, 594 (1991). Where an increase in the level of a disability is at issue, the primary concern is the present level of disability. Francisco v. Brown, 7 Vet. App. 55 (1994). Where the evidence contains factual findings that demonstrate distinct time periods in which the service-connected disability exhibits symptoms that would warrant different evaluations during the course of the appeal, the assignment of staged ratings is appropriate. See Hart v. Mansfield, 21 Vet. App. 505 (2007).

Consideration is given to the potential application of the various provisions of 38 C.F.R. Parts 3 and 4, whether or not they are raised by the Veteran. Schafrath, supra.

In view of the number of atypical instances it is not expected, especially with the more fully described grades of disabilities, that all cases will show all the findings specified. Findings sufficiently characteristic to identify the disease and the disability therefrom, and above all, coordination of rating with impairment of function will, however, are expected in all instances. 38 C.F.R. § 4.21.

Acquired psychiatric disorders including PTSD are evaluated under VA's General Rating Formula for Mental Disorders. Under the formula, a rating of 70 percent is warranted where there is occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; intermittently illogical, obscure, or irrelevant speech; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work like setting); inability to establish and maintain effective relationships. 38 C.F.R. § 4.130, Diagnostic Code 9411.

A 100 percent evaluation is warranted where there is total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. Id. 

As the United States Court of Appeals for the Federal Circuit recently explained, evaluation under 38 C.F.R. § 4.130 is "symptom-driven," meaning that "symptomatology should be the fact-finder's primary focus when deciding entitlement to a given disability rating" under that regulation. Vazquez-Claudio v. Shinseki, 713 F.3d 112, 116-17 (Fed.Cir.2013). The symptoms listed are not exhaustive, but rather "serve as examples of the type and degree of symptoms, or their effects, that would justify a particular rating." Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002). In the context of determining whether a higher disability evaluation is warranted, the analysis requires considering "not only the presence of certain symptoms[,] but also that those symptoms have caused occupational and social impairment in most of the referenced areas" - i.e., "the regulation ... requires an ultimate factual conclusion as to the Veteran's level of impairment in 'most areas.'" Vazquez-Claudio, 713 F.3d at 117-18; 38 C.F.R. § 4.130, Diagnostic Code 9411. 

Further, when evaluating a mental disorder, the Board must consider the "frequency, severity, and duration of psychiatric symptoms, the length of remissions, and the Veteran's capacity for adjustment during periods of remission," and must also "assign an evaluation based on all the evidence of record that bears on occupational and social impairment rather than solely on the examiner's assessment of the level of disability at the moment of the examination." 38 C.F.R. 
§ 4.126 (a). 

Reports of psychiatric examination and treatment frequently include a Global Assessment of Functioning (GAF) score. The Global Assessment of Functioning (GAF) scale is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." See Carpenter v. Brown, 8 Vet. App. 240, 242 (1995) (citing Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994) (DSM-IV)). A GAF score ranging from 41 to 50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). Richard v. Brown, 9 Vet. App. 266 (1996). 

The Board notes that VA recently updated references in its regulations to the Fifth Edition of the DSM (DSM-5). The changes apply to claims, such as the Veteran's, which were certified for appeal to the Board after August 4, 2014. See 80 Fed. Reg. 14,308 (March 19, 2015) (Applicability Date). However, the Board finds that GAF scores issued under DSM-IV remain evidence relevant to the evaluation of the Veteran's service-connected disability.

Although all the evidence has been reviewed, only the most relevant and salient evidence is discussed below. See Gonzales v. West, 218 F.3d 1378 (Fed. Cir. 2000) (holding that the Board must review the entire record but does not have to discuss each piece of evidence).

Facts and Analysis

Based on a review of all of the pertinent evidence, and after resolving all doubt in favor of the Veteran, the Board finds that for the entire period on appeal, the manifestations of the Veteran's PTSD represent total occupational and social impairment. The evidence indicates that, from June 14, 2010 to April 6, 2016, the Veteran experienced impairment in thought processes, persistent delusions, and grossly inappropriate behavior; was a persistent danger to others; was intermittently unable to perform activities of daily living; and was at times disoriented to time or place, all due to his service-connected PTSD. 

In this regard, June 2010 VA treatment notes, the Veteran reported having little interest or pleasure in doing things, and feeling down, depressed or hopeless, for most days. He reported experiencing nightmares, feeling constantly on guard, watchful or easily startled, as well as feeling numb or detached from others. 

In July 2010, the Veteran underwent a VA PTSD examination. At that time, he described difficulty falling asleep and staying asleep at night. He reported experiencing nightmares and night terrors three or more times per week. The Veteran described intrusive memories, hypervigilance and avoiding crowds. He admitted to a history of sudden rage reactions, resulting in broken objects such as plates and doors. The Veteran reported feeling depressed and lacking motivation most of the time. He described acute anxiety and recurring panic attacks. 

On examination, the Veteran was found to be appropriately dressed and groomed. He was cooperative and found to be capable of all independent activities of daily living. There was no communication impairment noted. The Veteran was found to be extremely anxious during the examination. His abstract reasoning, concentration and long- and short-term memory were all within normal limits, although the Veteran reported experiencing difficulty with attention and learning new material due to anxiety. There was no indication of any thought disorder or paranoia. He denied any history of suicidal thoughts or self-destructive behaviors. 

The examiner determined that the Veteran's PTSD symptoms caused him conflicts and work, missed days of work, and likely contributed to his unemployment at that time. He noted the Veteran was becoming increasingly isolative due to his anxiety and irritability. 

In an August 2010 VA mental health treatment note the Veteran reported difficulty focusing, problems sleeping, irritability and a lack of motivation. He reported a loss of interest in hobbies and activities, decreased energy and difficulty with memory and concentration. He denied suicidal thoughts or violent behavior. 

In an October 2010 VA treatment note the Veteran reported anxiety, hypervigilance, nightmares, poor sleep, an inability to relate to people, and irritability with his children. His mood was depressed, but insight and judgment good. He denied suicidal or homicidal ideation. He was assigned a GAF score of 45. 

In April 2011, the Veteran underwent an intake to a VA mental health treatment program. At that time, he was found not to be a risk to himself or others. He described increasing symptoms of depression and PTSD, and frequent arguments with his wife. He endorsed a persistent sad mood, insomnia, overeating, decreased energy, being restless and irritable, with constant difficulty concentrating, remembering and making decisions. On examination, he was found to be pleasant but depressed, with an appropriate affect and coherent speech. He was oriented times three, with memory impairment. Insight and judgment were good. In subsequent treatment that month, the Veteran continued to endorse nightmares, an inability to socialize, sleep problems and significant memory impairment. He was assigned a GAF score of 45. 

In a June 2011 report, the Veteran's private psychologist, Dr. V.G., described in detail the symptoms that the Veteran was experiencing at that time. She indicated that he was experiencing serious interpersonal problems, characterized as fights with his wife, cutting off contact with his mother, a lack of friends and total social isolation. The Veteran described avoiding his friends, even if he saw them in public. He avoided the grocery store altogether, unless it was in the middle of the night, to avoid crowds. His sisters no longer interacted with him.

The Veteran was unable to concentrate, leading to issues with school and employment. The Veteran described incidents when he would get "out of control" and punch doors or walls when fighting with his wife. Such fighting with his mother caused the cessation of their communication. Dr. V.G. also described impairments in the Veteran's judgment and thinking. He lacked motivation, and sometimes overslept until late in the afternoon. The Veteran stayed in his house for multiple days, preferring such isolation over the possibility of being in crowds or around people. 

The Veteran described nervous tics, to include a repetitive finger motion and pulling out his eyelashes and eyebrows when he experienced anxiety. He was hypervigilant, locking all doors in the house and then checking to see if there was anyone in the house with him. 

The Veteran experienced chronic sleep problems, including nightmares and night terrors which caused him to wake up screaming. The Veteran reported no suicidal or homicidal ideation, but a lot of intense anger and a desire to cause bodily harm to others for next to no reason. 

A July 2011 VA treatment note shows the Veteran was experiencing stress, related nightmares, and discomfort in public. He denied depression but endorsed episodic anger problems and difficulty with sleep. The Veteran denied suicidal or homicidal ideation. Memory problems were noted. He was assigned a GAF score of 45 at that time. 

In a September 2011 VA treatment note, the Veteran indicated he had lost his job after fighting with his boss after two weeks of employment. He reported concentration problems and depression. He experienced problems falling asleep and a poor appetite. On examination, he was found to be appropriately dressed, alert, cooperative and oriented times three. His mood was anxious and memory impairment was noted. No suicidal or homicidal ideation was noted. The examiner assigned a GAF score of 48.

In an October 2011 letter, the Veteran's wife described his anger and his constant fighting with people he did not know. She described paranoia and the Veteran's social isolation, including his estrangement from his own mother. The Veteran's wife described the nervous tics involving finger motions and pulling out his eyelashes and eyebrows. She indicated the Veteran mostly stayed in bed, only leaving to use the bathroom. He no longer bathed or cut his hair. 

The Veteran's wife described his inability to keep a job, due to fighting with his co-workers and bosses, and the resulting financial struggles. She indicated that he frequently woke up screaming in the middle of the night. He was obsessed with the security of the house, and didn't allow her to sit in front of windows. He believed that bags of trash on the side of the road were bombs, and demanded she remain vigilant when driving, yelling at her when she failed to describe to him their surroundings. 

In a November 2011 VA mental health treatment note, the Veteran indicated he was fighting constantly with his wife and had dropped out of school. His PTSD was considered stable at that time. The Veteran denied suicidal or homicidal ideation. He experienced constant nightmares and severe anxiety. He denied any delusions or hallucinations, although paranoia was noted. His judgment and insight were intact. The examiner assigned a GAF score of 48. 

In a May 2012 VA treatment note the Veteran indicated that he was working for a Veterans Service Organization. He reported nightmares at that time. On examination, the Veteran was casually groomed, alert, focused and oriented. His speech was goal directed, linear and logical. His mood was found to be stable, with an appropriate affect. There was no expressed suicidal ideation at that time. 

In an unrelated January 2014 compensation claim, the Veteran indicated that he was working but was on the verge of losing his job. In an associated letter, Dr. V.G. described the Veteran's recent decline in mental health, which resulted in him taking time off of work and skipping doctor's appointments, preferring to spend time in bed, watching television and crying. He was experiencing unprovoked and intense anger, and continued to be estranged from his mother and sisters. 

The Veteran's claim file contains a February 2014 protective order, ordering the Veteran to stay away from his wife following an arrest for domestic violence. 

In a February 2014 VA treatment note, the Veteran described the domestic violence arrest. He endorsed symptoms of irritability, avoidance, hypervigilance and hyperarousal. He also reported a lack of energy, decreased concentration and a lack of motivation. He adamantly denied suicidal ideation. His sleep was fragmented and punctuated by nightmares. 

On examination, the Veteran was found to be cooperative and casually groomed with good hygiene. His mood was irritable and anxious, with a labile affect. The Veteran's thought processes were logical and linear, with no formal thought disorder. His speech was clear and coherent, with no delusions or hallucinations. His cognitive functioning was grossly intact, with fair judgment and insight. 

In a March 2014 VA treatment note, the Veteran indicated that he continued to experience anxiety and depressive symptoms, as well as nightmares, hyperarousal and hypervigilance. He indicated a lack of energy and decreased motivation, along with sleep disturbances. 

At that time, the Veteran also endorsed a decreased ability to concentrate, trouble falling or staying asleep, general irritability, distressing nightmares, depression, withdrawal, difficulty with authority, difficulty with intimate relationships, an inability to express or show emotions except anger, and a feeling of detachment or estrangement from others. 

On examination, he was found to be pleasant, with a depressed mood, coherent speech and appropriate affect. He denied suicidal or homicidal ideation. The Veteran was oriented times three, with good judgment and insight.

In his April 2014 substantive appeal, the Veteran indicated that he was living in his truck and continued to isolate himself from others. 

In July and August 2014 VA treatment notes, the Veteran reported feeling depressed and anxious, with little motivation and energy. He reported some suicidal thoughts in the past, but denied them at that time. His sleep was poor and energy level low. On examination, he was found to be pleasant and cooperative, with a down mood and an anxious affect that was improving. His thought processes were logical and sequential, and speech normal. He denied delusions and hallucinations at that time. The Veteran's cognitive functioning was within normal limits and his insight and judgment were good. 

In an April 2015 VA treatment note, the Veteran reported experiencing nightmares and insomnia. He reported being isolated from others and avoiding crowds, due to anger issues. He indicated significant hyperarousal and hypervigilance. He denied suicidal ideation at that time. On examination, the Veteran was found to be well groomed with good hygiene. His behavior was calm, cooperative and pleasant, with clear, coherent and spontaneous speech. His affect was mildly dysphoric but insight and judgment were fair. 

In April 2016, the Veteran underwent a VA PTSD examination. At that time, he was diagnosed with PTSD; major depressive disorder, related to PTSD; and alcohol use disorder, ongoing, also related to PTSD. He was found to be experiencing flashbacks, nightmares, intrusive thoughts, an exaggerated startle response, anxiety in groups, hypervigilance, low motivation, low energy, problems with concentration and a lack of interest. The examiner found that the Veteran experienced occupational and social impairment, with deficiencies in most areas. 

The Veteran described his experiences with trying to keep a job in the past, as well as his attempts to go to school. Each was impossible due to his anxiety. The Veteran was employed at that time, although he indicated he struggled to go to work. He described the effect of his legal troubles on his current job, in that he was unlikely to be able to keep his job due to the domestic violence charge. He described being homeless and unemployed, and how he became depressed and tried to kill himself by overdosing on pills. He described anger issues, communication problems, and issues with isolating himself. At the time of the examination, he was living off and on with his sister and in his truck. He described yelling at his children and the cycle of violence in his marriage. 

On examination, the Veteran was found to experience irritable behavior and angry outbursts with little or no provocation, typically expressed as verbal or physical aggression toward people or objects, reckless or self-destructive behavior, hypervigilance, an exaggerated startle response, problems with concentration, and sleep disturbance. Such symptoms caused clinically significant distress or impairment in social, occupational, or other areas of functioning. The Veteran reported a depressed mood, anxiety, suspiciousness, panic attacks that occurred three or more times a week, a near-continuous panic and depression affecting the ability to function independently, appropriately and effectively. He also experienced chronic sleep impairment, mild memory loss, impairment of short- and long-term memory, flattened affect, impaired judgment, disturbances of motivation and mood, difficulty in establishing and maintaining effective work and social relationships, difficulty in adapting to stressful circumstances, inability to establish and maintain effective relationships, and suicidal ideation. 

The Veteran was also found to be experiencing obsessive rituals which interfered with routine activities, impaired impulse control, persistent delusions or hallucinations, a neglect of personal appearance and hygiene, an intermittent inability to perform activities of daily living, including maintenance of minimal personal hygiene, and disorientation to time and place. The examiner noted that the Veteran was trembling throughout the examination, appeared to be disoriented and unable to cope. 

The examiner concluded, as well, that the Veteran's PTSD as likely as not precluded the Veteran from obtaining and maintaining substantially gainful employment consistent with his education and past work experience. The Veteran was found to be emotionally unstable, with problems getting along with others, issues coping with negative feedback and problems with accountability. The Veteran's PTSD was also manifested in an impairment of stress tolerance, problems with good judgment, persistence and reliability, all of which would be a barrier to employment. He was unlikely and unable to solve problems on the job, remain emotionally stable during a work day, respond positively to change, handle negative feedback or time pressures, maintain stamina, concentrate or screen out environmental stimuli. 

In a June 2016 statement, the Veteran described a 2010 suicide attempt and subsequent suicidal ideation. He indicated that he experienced hallucinations, was a danger of hurting himself or others, had disorientation to time or place and memory loss. 

In a July 2016 letter, Dr. V.G. explained that the Veteran's symptoms have been consistent since she began treating him in 2010. She described severe depression, a lack of motivation, isolation and disconnect from the world, as well as his marital problems and a lack of relationship with his family. Since 2010, she indicated, the Veteran had experienced legal problems, health problems and anger issues, in addition to impaired thinking and judgment. 

After resolving all doubt in favor of the Veteran, and after considering the lay and objective evidence of record, the Board finds that the schedular criteria for a 100 percent rating are met for the period on appeal, as the Veteran's service-connected PTSD has effectively resulted in total occupational and social impairment.

The preponderance of the evidence shows that the Veteran's service-connected PTSD has been consistently manifested by impairment in thought processes, persistent delusions, grossly inappropriate behavior, persistent danger to others, an intermittent ability to perform activities of daily living, and disorientation to time or place. The June 2011 and June 2016 letters from Dr. V.G. described the Veteran's judgment and thinking as impaired throughout the appeal period. His wife, in her October 2011 letter, indicated the Veteran had delusions in which he saw things that were not there. Both described ways in which the Veteran's behavior was grossly inappropriate-Dr. V.G. describing the Veteran's violent outbursts at his wife and the wife detailing his demands on her, and his hypervigilance. Both described the Veteran repeatedly pulling out his eyebrows and eyelashes. 

The Veteran was shown by the evidence to be a persistent danger to others, as well. This was shown not only by the restraining order filed against him by his wife, but also by the descriptions of his angry outbursts at strangers and his own admissions in June 2011 that he harbored "intense anger" and a desire to harm others for no reason. The April 2016 VA examiner found that the Veteran experienced angry outbursts with little or no provocation, expressed as aggression toward other people. The Veteran also described a suicide attempt and persistent suicidal ideation. His wife described an inability to maintain minimal personal hygiene, in that the Veteran did not consistently bathe and stopped cutting his hair. In addition, the April 2016 examiner found that the Veteran was disoriented during his examination. 

In reaching the determination that a 100 percent rating is warranted for the appeal period, the Board acknowledges that not all of the criteria for the 100 percent disability rating have been shown. In this regard, the Veteran's speech was consistently found to be normal clear, and his behavior on examination was always cooperative. Additionally, VA treatment records noted at times that the Veteran's memory and concentration were good and that he was appropriately groomed and had appropriate insight. However, resolving all doubt in favor of the Veteran and reviewing of all of his symptoms as a whole, the Board finds that his symptoms been of the frequency, severity, and duration to have totally impaired his social and occupational functioning throughout the appeal period. See Vasquez-Claudio, supra.

In this regard, the Board places a high probative value on the qualified medical professionals who examined the Veteran and determined that his thinking was impaired, was considered to be a danger to others, and that he was disoriented and isolated due to his PTSD. The 100 percent rating is further supported by the Veteran's variously-assigned GAF scores of 45 and 48. As noted above, a GAF score between 41 and 50 denotes serious symptoms and any serious impairment in social, occupational, or school functioning.

The evidence shows that the Veteran's symptoms have consistently resulted in total occupational and social impairment. Occupationally, the Board notes that the evidence shows the Veteran was unable to maintain steady employment, as he would constantly fight with co-workers and lose his job. The record shows that the Veteran was able to secure employment through a Veteran's Service Organization; however, as noted by Dr. V.G. in her January 2014 letter and by the Veteran at his April 2016 VA examination, continued employment at that organization was in jeopardy due to the Veteran's consistent failure to report to work and legal problems.

Socially, the Veteran has consistently experienced isolation from others. He consistently reported being estranged from his mother and his siblings at various points during the appeal, due to his PTSD symptoms. His wife reported that the Veteran would avoid crowds of other people, even going so far as to shop in the middle of the night to do so. The Veteran indicated to Dr. V.G. that he would purposely avoid his friends if he saw them. Both Dr. V.G. and the Veteran's wife indicated that the Veteran spent an inordinate amount of time locked in his room, emerging only to use the toilet or eat. In his April 2014 appeal, the Veteran indicated that he was living in his truck and isolating himself from others. 

In view of the foregoing, the Board concludes that the evidence is at least in relative equipoise as whether the Veteran's PTSD results in total occupational and social impairment. Therefore, the Board finds that his PTSD has been manifested by serious symptoms that more nearly approximate total occupational and social impairment. See 38 C.F.R. § 4.21 (not all cases will show all findings specified in the rating criteria, but the rating must in all cases be coordinated with actual functional impairment). Thus, the Board concludes, with resolution of doubt in the Veteran's favor, that a 100 percent rating is warranted for the period from June 14, 2010 to April 6, 2016, under DC 9411. 38 C.F.R. §§ 4.3, 4.7.

Extraschedular Rating and TDIU

As the Board has granted the Veteran a 100 percent schedular evaluation herein, it is not necessary to consider whether he is entitled an extra-schedular rating under 38 C.F.R. § 3.321.

Turning to a total disability rating based on individual unemployability due to service-connected disabilities, or TDIU, the Board notes that the award of a 100 percent schedular disability rating for PTSD also effectively moots a claim for entitlement to a TDIU from the effective date of the 100 percent rating, which in this case is June 14, 2010. Locklear v. Shinseki, 24 Vet. App. 311, 314, n. 2 (2011) (citing Herlehy v. Principi, 15 Vet. App. 33, 35 (2001)); see also Rice v. Shinseki, 22 Vet. App. 447 (2009). 

The Board is cognizant of the decision of the United States Court of Appeals for Veterans Claims (Court) in which it determined that a separate TDIU rating predicated on one disability (although perhaps not ratable at the schedular 100 percent level), when considered together with another disability separately rated at 60 percent or more, could warrant special monthly compensation under 38 U.S.C.A. § 1114 (s). Bradley v. Peake, 22 Vet. App. 280 (2008). The Court reasoned that it might therefore benefit the Veteran to obtain or retain a TDIU even where a 100 percent schedular evaluation is already in effect. 

Here, the April 2016 VA examiner found that the Veteran was precluded from obtaining and maintaining substantially gainful employment due solely to his PTSD. Nothing in the record indicates that his only other service-connected disability-an ingrown left big toenail, which is currently rated as noncompensable-causes the Veteran to be unemployable. As the record shows that the Veteran is unemployable solely due to his psychiatric condition, which is rated at 100 percent, and his single other service-connected condition is both rated at a noncompensable rate and does not render him unemployable, further consideration of a TDIU rating for special monthly compensation purposes is not warranted. Id. at 292. 

ORDER

For the appeal period from June 14, 2010 to April 6, 2016, a rating of 100 percent for PTSD is granted, subject to the laws and regulations governing the award of monetary benefits. 

____________________________________________
MARJORIE A. AUER
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs