# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 09-2675

EDISON B. LOCKLEAR, APPELLANT,

v.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued December 9, 2010                    Decided February 11, 2011)

*Kenneth M. Carpenter,* of Topeka, Kansas, for the appellant.

*Michele R. Katina,* with whom *Will A. Gunn*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Nisha C. Wagle*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief for the appellee.

Before KASOLD, *Chief Judge*, and HAGEL and MOORMAN, *Judges*.

KASOLD, *Chief Judge*: Veteran Edison B. Locklear appeals through counsel that part of an April 22, 2009, Board of Veterans' Appeals (Board) decision that denied an effective date prior to May 20, 1990, for a total disability rating based on individual unemployability (TDIU) because a total disability rating implicitly had been denied by prior decisions. Mr. Locklear argues that the Board erred in its determination that an earlier claim for TDIU implicitly was denied and became final. The Secretary disputes this argument. For the reasons set forth below, the finding of the Board that entitlement to TDIU implicitly was denied by prior decisions will be reversed, and that part of the Board's decision that denied an effective date prior to May 20, 1990, for entitlement to TDIU will be set aside, and the matters remanded for further adjudication.

# I. BACKGROUND

Mr. Locklear served on active duty in the U.S. Marine Corps from November 1973 until March 1975. He initially applied for benefits for a mental condition in May 1975, for a nervous disorder in June 1976, and for a mental disorder in February 1977, but was denied disability compensation benefits on all three occasions and did not appeal those decisions. The parties do not dispute that these decisions became final. *See also DiCarlo v. Nicholson*, 20 Vet.App. 52, 55-56 (2006) (an unappealed decision becomes final at the expiration of the time of appeal).

Upon receiving evidence that Mr. Locklear was undergoing treatment for schizophrenia, the VA regional office (RO) granted service connection for schizophrenia in December 1981 and assigned a 0% disability rating, effective from May 8, 1981. *See* 38 C.F.R. § 3.157(b) (2010) (a report of treatment may be accepted as a claim to reopen). In a May 1983 Board decision, Mr. Locklear was granted a 10% disability rating for schizophrenia. Pertinent to the issue now on appeal, the May 1983 Board also referred the issues of TDIU and pension benefits to the RO for appropriate action, including the preparation of a Statement of the Case (SOC). Specifically, the Board stated the following:

> During the course of the appeal, the veteran and his representative raised the issues of entitlement to benefits based on individual unemployability and the nonservice-connected pension benefit. Inasmuch as a statement of the case has not been prepared on these issues, the Board does not take jurisdiction of them at this time. They are referred to the originating agency for appropriate action.

Record (R.) at 2313. The record reflects that the Board also explicitly notified the director of the Winston-Salem, North Carolina, RO, of this referral. *See* R. at 2309 ("Your attention is invited to [the paragraph quoted above] of the decision for appropriate action."). Thereafter, a June 1983 rating decision implemented the 10% disability rating for schizophrenia, but did not mention TDIU or pension benefits. Although a form for claiming pension benefits was sent to Mr. Locklear, which he subsequently completed, no form for claiming TDIU benefits was ever sent to Mr. Locklear.

Subsequent to the June 1983 rating decision, Mr. Locklear continued to seek greater benefits for his schizophrenia, ultimately leading to a February 1986 Board denial that became final. He again sought increased disability compensation for his schizophrenia in May 1987, which was denied in August 1987 and not appealed, also becoming final. Although the February 1986 Board decision

2

mentions Mr. Locklear's work history and evaluates his "industrial impairment," these references are made in the context of assessing an increased schedular rating for schizophrenia, R. at 2124; *see* R. at 2123 (citing 38 C.F.R. § 4.129, 4.130 (1986) (taking the claimant's "social and industrial adaptability" into consideration when assigning a rating for mental health disorders)); *see also* 38 C.F.R. § 4.132, Diagnostic Code (DC) 9204 (1986) (taking the claimant's "social and industrial adaptability" into consideration when assigning a rating for schizophrenia, chronic undifferentiated type), and none of the correspondence between June 1983 and August 1987 specifically mentions TDIU, "individual unemployability," or 38 C.F.R. § 4.16 (addressing TDIU). Further, the record contains no SOC that addresses the referred issue of TDIU, and the Secretary does not contend that such an SOC ever was prepared.

In May 1991, Mr. Locklear filed another increased-rating claim for schizophrenia. This time, on appeal to the Board, he ultimately was assigned a 100% schedular disability rating with an effective date of May 20, 1990, one year earlier than the date he submitted his claim for an increased schedular disability rating. *See* 38 U.S.C. § 5110(b)(2). Mr. Locklear appealed the effective date determination, but the Court affirmed the Board's decision because an earlier effective date was not permitted by law. *See id.*; R. at 1869-74. The Court's decision was not appealed.[1] The record does not reflect, and the Secretary presents no argument, that either the Board decision or the SOC associated with this Board decision specifically addressed TDIU.

Mr. Locklear's present appeal arises from his August 2006 claim for, inter alia, TDIU benefits for the period prior to May 20, 1990.[2] Ultimately, on administrative appeal, the Board noted that entitlement to TDIU had been raised at least four times prior to May 20, 1990, but reasoned that the subsequent denials of increased benefits for schizophrenia that became final all served to implicitly deny TDIU benefits. This appeal followed.

Succinctly stated, the issue before the Court is whether, under circumstances where the

---

[1] Neither party argues that the Court's December 1997 decision affects the issue now on appeal. We agree. *See Holland v. Brown*, 6 Vet.App. 443, 447 (1994) (holding that "it was not inappropriate" for the Board to refer a TDIU claim to the RO for further adjudication and still decide an increased-ratings claim); *see also* related discussion in text, *infra* at section III.A.

[2] Because Mr. Locklear has been awarded a 100% schedular disability rating effective from May 20, 1990, entitlement to TDIU since that date effectively is mooted. *See Herlehy v. Principi*, 15 Vet.App. 33, 35 (2001) (finding request for TDIU post-July 1989 moot where 100% schedular rating was awarded in July 1989).

Secretary or Board specifically identifies and separates the adjudication of a veteran's entitlement to TDIU from the adjudication of a schedular rating for an underlying disability, subsequent decisions denying increased schedular ratings for the underlying disability serve to implicitly deny entitlement to TDIU, even when there is no reference to TDIU or regulations applicable thereto in the subsequent decisions.

## II. THE PARTIES' ARGUMENTS

On appeal, Mr. Locklear argues that the 2009 Board erred in concluding that entitlement to TDIU implicitly was denied by RO and Board decisions from June 1983 through August 1987. Specifically, he contends that the May 1983 Board explicitly separated the adjudication of entitlement to TDIU from the adjudication of his claim for benefits for schizophrenia, and that entitlement to TDIU has remained unadjudicated. Additionally, Mr. Locklear argues that the implicit denial rule is inapplicable in his circumstances because none of the decisions subsequent to the May 1983 Board's referral mention TDIU, such that a reasonable person might be on notice that the RO and Board decisions addressing increased schedular ratings also constituted a denial of entitlement to TDIU. *See Adams v. Shinseki*, 568 F.3d 956, 961 (Fed. Cir. 2009) ("[T]he implicit denial rule is, at bottom, a notice provision.").

Conversely, the Secretary argues that the Board did not err in 2009 when it applied the implicit denial rule. The Secretary notes that TDIU is potentially part of every increased-rating claim. *See Rice v. Shinseki*, 22 Vet.App. 447, 453 (2009) (a request for TDIU "is not a separate claim for benefits," but is best analyzed as a request for an appropriate disability rating, either "as part of the initial adjudication of a claim, or . . . as part of a claim for increased compensation"); *see also Comer v. Peake*, 552 F.3d 1362, 1367 (Fed. Cir. 2009) (TDIU "is implicitly raised whenever a pro se veteran, who presents cogent evidence of unemployability, seeks to obtain a higher disability rating"). The Secretary reasons, as did the Board in the decision now on appeal, that the denial of Mr. Locklear's increased-rating claim also implicitly denied entitlement to TDIU. *See Andrews v. Nicholson*, 421 F.3d 1278, 1283 (Fed. Cir. 2005) ("[W]here an RO renders a decision on a veteran's claim for benefits but fails to address one of the claims, that decision is final as to all claims."). The Secretary acknowledged at oral argument that the key to an implicit denial inquiry is whether there

was notice to the claimant that the Secretary has acted on the claim. In this case, the Secretary argues that a reasonable person would understand that the Board considered and implicitly denied entitlement to TDIU in its February 1986 decision because it mentioned Mr. Locklear's work history and evaluated his "industrial impairment" in the context of a schedular disability rating for schizophrenia. R. at 2124; *see Ingram v. Nicholson*, 21 Vet.App. 232, 248 (2007) ("It is reasonable to say that an appellant who receives a disability rating that is less than 100% has notice of how his conditions have been rated . . . .").

### III. DISCUSSION

#### A. Adjudicating Claims and Issues

As the Secretary notes, *Rice* states that a request for TDIU is "not a separate claim for benefits," and is best analyzed as a request for an appropriate disability rating, either "as part of the initial adjudication of a claim, or . . . as part of a claim for increased compensation." 22 Vet.App. at 453-54. In *Rice*, however, the Secretary did not separate the adjudication of an initial disability rating from the adjudication of TDIU. *Id.* Conversely, in Mr. Locklear's case, the Secretary specifically separated the adjudication of the schedular disability rating from the adjudication of TDIU. Bifurcation of a claim generally is within the Secretary's discretion. *See Tyrues v. Shinseki*, 23 Vet.App. 166, 176 (2009) (en banc) (holding that it is permissible for the Secretary to bifurcate a request for benefits on the basis of direct service connection from the request on the basis of presumptive service connection); *Roebuck v. Nicholson*, 20 Vet.App. 307, 315 (2006) (acknowledging that the Board can bifurcate a claim and address different theories or arguments in separate decisions); *Holland v. Brown*, 6 Vet.App. 443, 447 (1994) (holding that "it was not inappropriate" for the Board to refer a TDIU claim to the RO for further adjudication and still decide an increased-ratings claim). In fact, *Rice* explicitly noted the possibility that the separation of TDIU would provide distinguished circumstances, *id.* at 455 n.7 ("This is not to say that, just because TDIU is raised in the context of an initial adjudication of a claim, in an appropriate case, the Court could not review a schedular rating assigned by the Board even though the Board also remanded or referred an issue as to entitlement to TDIU.").

5

## B. The Implicit Denial Rule

"The 'implicit denial' rule provides that, in certain circumstances, a claim for benefits will be deemed to have been denied, and thus finally adjudicated, even if the [RO or Board] did not expressly address that claim in its decision." *Adams*, 568 F.3d at 961. The "certain circumstances" are when a reasonable person would understand from a decision that his request for benefits not explicitly addressed in the decision nevertheless implicitly was adjudicated and denied by that decision. *See Jones v. Shinseki*, 619 F.3d 1368, 1373 (Fed. Cir. 2010) (The key inquiry is "whether sufficient notice has been provided so that a veteran would know, or reasonably can be expected to understand, that he will not be awarded benefits for the disability asserted in his pending claim"); *Ingram*, 21 Vet.App. at 243 ("[A] reasonably raised claim remains pending until there is either a recognition of the substance of the claim in an RO decision from which a claimant could deduce that the claim was adjudicated or an explicit adjudication of a subsequent 'claim' for the same disability."); *see also Adams*, 568 F.3d at 961 ("[T]he implicit denial rule is, at bottom, a notice provision.").

The award of a disability rating less than 100% generally provides notice as to how the Secretary has rated a claimant's condition and serves as a final decision, if unappealed, with regard to entitlement to any higher disability rating associated with the underlying disability, including TDIU. *Ingram*, 21 Vet.App. at 248. This general rule, however, is not for application when the Secretary explicitly separates the adjudication of one disability rating or benefit from another. This is because, upon seeing a part of a claim broken out for separate adjudication, a reasonable person would expect to see a *specific decision* on the part that was separated, or at least some *specific indication* that the separated part was adjudicated.[3] To expect a reasonable person to infer an implicit denial of the separated part solely from the denial of the remaining part not only defies common sense, but would be contrary to the "veteran-friendly nature of the veterans benefits system." *Kouvaris v. Shinseki*, 22 Vet.App. 377, 381 (2009); *see Hodge v. West*, 155 F.3d 1356, 1363 (Fed. Cir. 1998) ("[I]n the context of veterans' benefits where the system of awarding

---

[3] The Secretary may separate out parts of a claim through referral or remand, which are distinct concepts. *See Godfrey v. Brown*, 7 Vet.App. 398, 409-10 (1995) (remand appropriate where proper evidentiary development has not been completed; referral appropriate when newly raised claim is not in administrative appellate status).

6

compensation is so uniquely pro-claimant, the importance of systemic fairness and the appearance of fairness carries great weight.").

## C.  Application of Law

There may be instances where, even though a claim has been bifurcated or a part identified for separate adjudication, there is sufficient notice in the resolution of one part of the claim that the bifurcated part has been denied as well.  This is not one of those cases.  Here, we conclude that the notice provided to Mr. Locklear subsequent to the Board's May 1983 referral was not sufficient for a reasonable person to understand that the adjudications implicitly denied entitlement to TDIU.

At oral argument, the Secretary was unable to identify any subsequent SOCs or decisions denying an increased rating for schizophrenia that mentioned TDIU, the term "individual unemployability," or § 4.16.  Although the Secretary noted that the February 1986 Board decision mentions Mr. Locklear's work history pursuant to holding that he had only "slight social and industrial impairment," it is evident that the Board made references to his employment in order to resolve the appropriate schedular rating for schizophrenia, which included an examination of social and industrial adaptability pursuant to regulations at that time.  R. at 2124; *see* 38 C.F.R. § 4.132, DC 9204 (1986); R. at 2123 (citing 38 C.F.R. § 4.129, 4.130 (1986)); *see also Rice*, 22 Vet.App. at 452 (noting that, while "the rating schedule is based on the 'average impairment in earning capacity caused by a disability,' . . . entitlement to TDIU is based on an individual's particular circumstance") (quoting *Thun v. Peake*, 22 Vet.App. 111, 116 (2008)); *Parker v. Brown*, 7 Vet.App. 116, 118 (1994) (even though a rating less than 100% under the rating schedule may be correct, there are subjective factors that may permit assigning TDIU).

Although the 1986 Board decision clearly informed Mr. Locklear that his claim for benefits for schizophrenia had been adjudicated based on a schedular rating, it is not reasonable to conclude that invoking industrial impairment solely in the context of assessing the appropriate schedular rating for schizophrenia reasonably would inform a pro se claimant that entitlement to TDIU – which previously was identified for adjudication separate from entitlement to a schedular rating for schizophrenia – implicitly had been adjudicated when the schedular rating decision was rendered.

Also significant is the fact that entitlement to TDIU had been separated by the Board specifically because "a statement of the case had not been prepared on [TDIU]."  R. at 2313.

7

Issuance of an SOC is critical because the function of an SOC "is to give the [claimant] information with which to evaluate the feasibility of pursuing his claim," *Hamilton v. Brown*, 39 F.3d 1574, 1576 (Fed. Cir. 1994), and puts the claimant on notice that a particular claim is at issue, *Herndon v. Principi*, 311 F.3d 1121, 1125 (Fed. Cir. 2002). *See also* 38 U.S.C. § 7105(d)(1); *Collaro v. West*, 136 F.3d 1304, 1308 (Fed. Cir. 1998) ("The agency must prepare a statement of the case, which is intended to 'provide the appellant notice of those facts and applicable laws and regulations'" regarding his claim) (quoting 38 C.F.R. § 19.120(a) (1989)); 38 C.F.R. § 19.29 (2010). Because the Board referred the responsibility of the adjudication of entitlement to TDIU to the RO for the preparation of an SOC, without some other fact that could imply notice, a reasonable person would understand that an SOC addressing TDIU was a necessary predicate to any subsequent decision on entitlement to TDIU. Here, no such SOC was ever issued.

At oral argument, the Secretary additionally argued that, even though the adjudication of entitlement to TDIU specifically was bifurcated from adjudication of the increased-ratings claim, Mr. Locklear's subsequent correspondence mentioned his inability to find work and therefore implicitly reunited the previously bifurcated matters. Assuming arguendo that a claimant can reunite what the Secretary has bifurcated, *but see Tyrues*, *supra*, the Secretary points to nothing in the record that might evince acceptance of a reunion of the bifurcated matters or adjudication thereof. Indeed, nothing in Mr. Locklear's submissions indicates a specific effort to reunite the adjudications of entitlement to TDIU and the schedular rating for schizophrenia, as opposed to simply arguing for the highest schedular rating possible. Moreover, given the explicit bifurcation of the adjudications, the Secretary's notion of an implicit reuniting is incompatible with the veteran-friendly nature of the nonadversarial, administrative claims system and our caselaw that refuses standards requiring legal sophistication beyond that which can be expected of a lay claimant. *See Kouvaris*, *supra*; *Clemons v. Shinseki*, 23 Vet.App. 1, 5 (2009) (rejecting a standard for reading pleadings that "requires legal sophistication beyond that which can be expected of a lay claimant").

We are cognizant of the fact that the rating schedule for mental disabilities, including schizophrenia, takes into consideration the impact of the mental disability on the occupational functioning of a veteran, and that Mr. Locklear may not be entitled to TDIU through August 1987, when he was last denied a disability rating higher than 10% for his sole service-connected disability.

8

*See* 38 C.F.R. § 4.16 (1986) (entitlement to TDIU requires either (a) one service-connected disability rated at 60% disabling, or two service-connected disabilities, with at least one rated at 40% disabling, and an inability to maintain a substantially gainful occupation as a result of service-connected disabilities, or (b) referral for extraschedular consideration for those veterans who are unemployable as a result of service-connected disabilities, but whose disability ratings do not meet the criterion of (a)). Nevertheless, as noted above, the criteria for entitlement to TDIU benefits differs from scheduler rating entitlement, *see Rice*, 22 Vet.App. at 452; *Parker*, *supra*, and the Board should evaluate entitlement to TDIU in the first instance, *see Webster v. Derwinski*, 1 Vet.App. 155, 159 (1991) (Court is not to conduct de novo factfinding but rather to remand for the Board to find facts in the first instance). Moreover, because entitlement to TDIU remains unadjudicated, additional facts may be added to the record and, at a minimum, the facts must be developed in the first instance for the period from August 1987 through May 20, 1990, the current effective date of Mr. Locklear's 100% scheduler disability rating.

Accordingly, because the 1983 Board explicitly separated the adjudication of entitlement to TDIU from the adjudication of the appropriate scheduler rating for schizophrenia and no subsequent SOC or decision specifically adjudicated or otherwise specifically addressed entitlement to TDIU, we have the firm conviction that the Board clearly erred in finding that entitlement to TDIU, once explicitly separated for independent adjudication, implicitly was denied by decisions on entitlement to a scheduler rating for schizophrenia. *See Bowling v. Principi*, 15 Vet.App. 1, 6 (2001) (holding that "whether a veteran is unable to secure and follow a substantially gainful employment is a question of fact" reviewed under the "clearly erroneous" standard); *Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1991) ("'A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948))). Reversal of the Board finding and remand are warranted. *See Padgett v. Nicholson*, 19 Vet.App. 133, 146-47 (2005) (en banc) (a clearly erroneous finding may be reversed or set aside), *withdrawn on other grounds*, 19 Vet.App. 334 (2005), *rev'd and remanded*, 473 F.3d 1364 (Fed. Cir. 2007); *Tucker v. West*, 11 Vet.App. 369, 374 (1998) (remand is appropriate "where the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where

the record is otherwise inadequate"). On remand, Mr. Locklear may present, and the Board must consider, any additional evidence and argument in support of the matters remanded. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). These matters are to be provided expeditious treatment on remand. *See* 38 U.S.C. § 7112.

## IV. CONCLUSION

Upon consideration of the foregoing, the finding of the April 22, 2009, Board that Mr. Locklear's entitlement to TDIU implicitly was denied by subsequent decisions is REVERSED, and that part of the Board's decision that denied an effective date prior to May 20, 1990, for entitlement to TDIU is SET ASIDE and the matters REMANDED for further development and readjudication consistent with this decision.