﻿Citation Nr: AXXXXXXXX
Decision Date: 01/03/19 Archive Date: 01/02/19

DOCKET NO. 180906-484
DATE: January 3, 2019

ORDER

Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU), effective August 30, 2016, is granted.

REMANDED

Entitlement to a TDIU for the period prior to August 30, 2016, is remanded.

Entitlement to service connection for degenerative joint disease of the left hip is remanded.

Entitlement to service connection for residuals of a right hip and femur injury is remanded.

FINDING OF FACT

From August 30, 2016, the Veteran’s service-connected disabilities preclude his from securing and following any substantially gainful occupation.

CONCLUSION OF LAW

The criteria for entitlement to a TDIU for the period from August 30, 2016 have been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.340, 3.341, 4.16 (2017). 

REASONS AND BASES FOR FINDING AND CONCLUSION

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Board is honoring the Veteran’s choice to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. 

The Veteran served on active duty from October 1966 to September 1968. The Veteran selected the Higher-Level Review lane when he submitted the RAMP election form. Accordingly, the August 2018 RAMP rating decision considered the evidence of record as of the date VA received the RAMP election form. The Veteran timely appealed this RAMP rating decision to the Board and requested 90 days to submit additional evidence. 

In the August 2018 RAMP decision, the Agency of Original Jurisdiction (AOJ) found that new and relevant evidence was submitted to warrant readjudicating the claim for service connection for residuals of a right hip and femur injury. The Board is bound by this favorable finding. AMA, Pub. L. No. 115-55, § 5104A, 131 Stat. 1105, 1106 – 07. 

This decision bifurcates the issue of entitlement to a TDIU into two separate time periods, the period prior to August 30, 2016, and the period, resultant to the grant of a TDIU herein, effective August 30, 2016. Such bifurcation of the issue permits a grant of benefits under 38 C.F.R. § 4.16 (a) to which the evidence of record shows the Veteran is entitled, without delay of this grant of benefits awaiting compliance with procedural adjudication of the remainder of the TDIU appeal under 38 C.F.R. § 4.16 (b) for the period for which the service-connected disabilities did not meet the combined rating percentage criteria and to which a duty to assist error has occurred. See Locklear v. Shinseki, 24 Vet. App. 311 (2011) (bifurcation of a claim generally is within VA's discretion); Tyrues v. Shinseki, 23 Vet. App. 166, 178-79 (2009), aff'd, 631 F.3d 1380 (Fed. Cir. 2011) (holding that it is permissible to bifurcate a claim and to adjudicate the distinct theories of entitlement separately).

1. Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities

Total disability means that there is present any impairment of mind or body sufficient to render it impossible for the average person to follow a substantially gainful occupation. 38 C.F.R. §§ 3.340, 4.15. 

When jobs are not realistically within his physical and mental capabilities, a veteran is determined unable to engage in a substantially gainful occupation. Moore v. Derwinski, 1 Vet. App. 356 (1991). In making this determination, consideration may be given to factors such as the veteran’s level of education, special training, and previous work experience, but not to age or impairment caused by non-service-connected disabilities. 38 C.F.R. §§ 3.341, 4.16, 4.19; Van Hoose v. Brown, 4 Vet. App. 361 (1993).

Total disability ratings for compensation may be assigned, where the schedular rating is less than total, when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities provided that if there is only one such disability, this disability shall be ratable at 60 percent or more, and that, if there are two or more such disabilities, there shall be at least one disability ratable at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent or more. For the purpose of one 60 percent or one 40 percent disability in combination, disabilities resulting from a common etiology or a single accident will be considered as one disability. 38 C.F.R. § 4.16 (a).

The Board notes that the ultimate question of whether a Veteran is capable of substantially gainful employment is not a medical one; that determination is for the adjudicator. Geib v. Shinseki, 733 F.3d 1350, 1354 (Fed. Cir. 2013). Thus, the VA examiners’ conclusions are not dispositive. However, the observations of the examiners regarding functional impairment due to the service-connected disability go to the question of physical or mental limitations that may impact his ability to obtain and maintain employment.

From August 30, 2016, the Veteran was service connected for coronary artery disease status post coronary artery bypass graft and aortic valve replacement as 60 percent disabling, post-traumatic stress disorder as 30 percent disabling, residuals scar from an aortic valve replacement associated with coronary artery disease as 10 percent disabling, bilateral tinnitus as 10 percent disabling, bilateral hearing loss as 10 percent disabling, and residual scars status post a coronary artery bypass graft and aortic valve replacement surgery associated with coronary artery disease as noncompensable. His combined disability rating was 80 percent, from August 30, 2016. Thus, the Board finds that the schedular criteria for a TDIU have been satisfied effective August 30, 2016. 

In an October 2016 VA examination for heart conditions, the examiner found that the Veteran’s metabolic equivalents (METs) level was between 3 to 5 METs, consistent with activities such as light yard work (weeding), mowing lawn (power mower), and brisk walking (4 miles per hour). The Veteran reported symptoms of dyspnea, fatigue, angina, and dizziness. The examiner also found that the Veteran had, per his report, intermittent (paroxysmal) atrial flutters. Due to his heart disability, the Veteran had a partial impairment of physical activities of employment consistent with his METs level. 

In a January 2017 VA audiological examination, the examiner found that the Veteran’s bilateral hearing loss resulted in him missing “a lot of words” and having to listen to the television on high volume if there was motion in other rooms. She also found that his bilateral tinnitus resulted in him missing “a lot of words” and having to asking people to repeat themselves. 

According to a Request for Employment Information in Connection with Claim (VA Form 21-4192), the Veteran voluntarily retired from his position as piping systems training manager with DuPont Advanced Fibers Systems. He worked at DuPont Advanced Fibers Systems from May 1965 to May 2004.

According to VA treatment records from August 2016 to January 2017, the Veteran had chronic mild dyspnea, but regularly denied chest pain, respiratory, shortness of breath, and palpitations. The records show that the Veteran, at times, had an irregular heart rate and rhythm, but no murmurs. He was seeing a private cardiologist who helped him manage his coronary artery disease. In August 2016, the Veteran stated that while he was working in his garage, he had shortness of breath with right chest pressure pain and diaphoresis. He was taken to a private medical facility, where he was apparently ruled for a myocardial infarction based on cardiac enzymes. However, according to a September 2016 VA treatment record, the Veteran had thought he had a heart attack in August 2016, but was told that he had gallstones. 

The Veteran also reported that he was independent in activities of daily living and mobility. He took college courses for enjoyment and had an active lifestyle. He reported that he had supportive family and friends who could assist him as needed. 

According to an April 2018 vocational assessment by Ms. Janette Clifford, vocational expert, the Veteran had been unable to maintain substantially gainful employment on a regular and consistent basis, even sedentary work, due to his service-connected disabilities since 2004, when he retired. She found that the Veteran’s physical limitations limited him to only sedentary work and that his PTSD would more likely than not make it impossible for him to maintain appropriate relationships with coworkers, supervisors, and the general public as required to maintain employment, concentrate on tasks, or keep up pace or production of a normal work flow to complete critical job requirements. 

Ms. Clifford specifically found that the Veteran’s heart condition resulted in an inability to perform basic daily activities of living to completion, including any work activity. He experienced significant episodes of fatigue, isolation, dizziness, angina, dyspnea, and syncope, which prevented him from maintaining a regular and predictable daily or work schedule. The Veteran’s PTSD symptoms included significant anger issues, avoidance, distrust of people, negative alterations in cognition and mood, anxiety around loud noises, and chronic sleep impairment, which made it unlikely that he would be able to work effectively and appropriately with coworkers, supervisors, and/or clients. The Veteran’s tinnitus decreased his ability to concentrate on tasks and added to his fatigue, since it worsened at night. She found that the Veteran’s psychiatric and physical conditions had an adverse synergistic effect caused by the interaction of these conditions that resulted in even grated impairment than would result from looking at each disability individually. 

Ms. Clifford expressly only considered the Veteran’s service-connected disabilities. She noted that the Veteran graduated from high school and completed one year of college. He attended several work-related training sessions and was a certified pipe fitter. She also noted that the Veteran had worked for DuPont from May 1965 to May 2004. Her findings and opinion was based on review of the claims file.

The Board finds that the April 2018 vocational assessment is the most probative in support of the Veteran’s claim for a TDIU as it was based on a thorough and comprehensive review of the claims file and supported by an adequate rationale.

Based on the foregoing, the Board finds that the evidence is at least in equipoise that the Veteran’s service-connected disabilities preclude him from securing and following any substantially gainful employment. Therefore, resolving all reasonable doubt in favor of the Veteran, the claim for a TDIU is granted, effective August 30, 2016. 38 U.S.C. § 5107 (b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

REASONS FOR REMAND

The following issues are remanded to correct duty to assist errors that occurred prior to the August 2018 rating decision on appeal.

1. Entitlement to a TDIU for the period prior to August 30, 2016

For the period prior to August 30, 2016, the criteria for a TDIU under 38 C.F.R. § 4.16 (a) are not met. However, even when the criteria under 38 C.F.R. § 4.16 (a) are not met, entitlement to a TDIU on an extraschedular basis may be considered when the Veteran is unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities. 38 C.F.R. §4.16 (b). 

In the present case, there is evidence that suggests that the Veteran was unable to secure or follow a substantially gainful occupation due to his service-connected disabilities prior to August 30, 2016. 

As discussed in detail above, in an April 2018 vocational assessment by Ms. Janette Clifford, vocational expert, she opined that the Veteran had been unable to maintain substantially gainful employment on a regular and consistent basis, even sedentary work, due to his service-connected disabilities since 2004. She found that the Veteran’s physical limitations limited him to only sedentary work and that his PTSD would more likely than not make it impossible for him to maintain appropriate relationships with coworkers, supervisors, and the general public as required to maintain employment, concentrate on tasks, or keep up pace or production of a normal work flow to complete critical job requirements.

However, the Board does not have the authority to assign an extraschedular TDIU in the first instance. Bowling v. Principi, 15 Vet. App. 1 (2001). Therefore, referral to the Director, Compensation Service, for consideration of entitlement to a TDIU prior to August 30, 2016, is warranted on remand. 38 C.F.R. § 4.16 (b).

2. Entitlement to service connection for degenerative joint disease of the left hip is remanded.

3. Entitlement to service connection for residuals of a right hip and femur injury is remanded.

The AOJ obtained a January 2014 VA examination and January 2014 VA addendum opinion prior to the August 2018 rating decision. However, the VA examination and medical opinion do not provide an adequate rationale regarding whether the Veteran’s right or left hip disabilities had its onset in service or is otherwise related to service. An examiner should consider both the lay and medical evidence and not rely solely on a lack of corroborating medical evidence. See Dalton v. Nicholson, 21 Vet. App. 23, 39 (2007). Significantly, new lay statements were associated with the claims file after the January 2014 medical opinions and before the August 2018 rating decision. Additionally, it is not clear whether the January 2014 VA examiner considered the lay statements that were of record when rendering his opinion. These lay statements assert that the Veteran had ongoing and continuous hip pain after separation from service. While the Board acknowledges that a favorable medical opinion by Dr. R. K. Jassey, a VA physician, is of record, it is inadequate as it is not supported by any rationale. As such, a remand is required. 

The matters are REMANDED for the following action:

1. Schedule the Veteran for an appropriate VA examination to address the nature and etiology of any diagnosed right and left hip disabilities. Provide the examiner with the claims file, including a copy of this REMAND, for review. 

After review of the claims file, the examiner should address the following:

a. Is it at least as likely as not (50 percent probability or greater) that the Veteran’s left hip disability had its onset in or is otherwise related to service.

b. Is it at least as likely as not (50 percent probability or greater) that the Veteran’s right hip disability had its onset in or is otherwise related to service.

In providing the opinions requested above, the examiner must consider statements from the Veteran and his friends and family regarding the onset and continuity of symptomatology since service. Dalton v. Nicholson, 21 Vet. App. 23 (2007)

A complete rationale for all opinions must be provided. If the examiner cannot provide any requested opinion without resorting to speculation, it must be so stated, and the examiner must provide the reasons why an opinion would require speculation. 

(Continued on the next page)

 

2. Refer the issue of extraschedular consideration of a TDIU for the period prior to August 30, 2016, to the Director, VA Compensation Service. Include a full statement as to the Veteran's service-connected disabilities, employment history, educational and vocational attainment, and all other factors having a bearing on the issue.

 

LESLEY A. REIN

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD E. Ko, Associate Counsel