NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**SHIRLEY MOORE LEWIS,**
*Claimant-Appellant*

**v.**

**DOUGLAS A. COLLINS, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2023-1867

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 21-6821, Judge Scott Laurer.

---

Decided: February 27, 2026

---

KENNETH DOJAQUEZ, Carpenter Chartered, Topeka, KS, argued for claimant-appellant.

BRENDAN DAVID JORDAN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by ELIZABETH MARIE HOSFORD, PATRICIA M. MCCARTHY, BRETT SHUMATE; BRIAN D. GRIFFIN, DEREK SCADDEN, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

_____

Before LOURIE, DYK, and CHEN, *Circuit Judges*.

CHEN, *Circuit Judge*.

Shirley Moore Lewis, on behalf of her late brother, William Moore[1] appeals the final decision of the U.S. Court of Appeals for Veterans Claims (Veterans Court) affirming the decision of the Board of Veterans Appeals (Board), which denied his claim for an increased rating for an acquired psychiatric disorder. *Moore v. McDonough*, No. 21-6821, 2023 WL 1786300 (Vet. App. Feb. 7, 2023) (*Decision*). For the following reasons, we *affirm*.

BACKGROUND

I

Mr. Moore served in the Marine Corps from 1964 to 1968, and suffered gunshot wounds in 1967 while on patrol in Vietnam. Over the decades since he left service, Mr. Moore has had a long, complicated history with the VA's benefits claim process relating to several different service-connected disabilities. In a 1969 decision, the Board rated Mr. Moore's muscle damage as 30 percent disabling. Beginning in 1992, Mr. Moore received a combined 100 percent rating for muscle damage, nerve damage, and right knee disabilities. Mr. Moore filed his original claim for service-connected post-traumatic stress disorder (PTSD) in 1995, and the Department of Veterans Affairs (agency) rated his PTSD as 30 percent disabling with an effective date of April 3, 1995. In 2001, the Board found clear and unmistakable error (CUE) in the original 1969 decision,

_____

[1]    As directed by this Court in ECF No. 55, Ms. Lewis was substituted as appellant on February 26, 2026, without objection. However, when referring to appellant in this opinion, we will refer to Mr. Moore.

concluding that the muscle damage should have been rated as 50 percent disabling.  In the subsequent rating decision that revised the 1969 decision, the agency also increased Mr. Moore's PTSD rating to 50 percent.  Mr. Moore filed a notice of disagreement (NOD), requesting that the agency increase his PTSD rating to 70 percent and set his effective date for his service-connected PTSD to 1968.

Mr. Moore later requested aid and attendance based on intervertebral disc syndrome, and the agency sent him a notification letter in 2006 indicating that it rated his degenerative disc disease as 60 percent disabling.  Although a single disability with a schedular rating of 60 percent or more generally renders a veteran eligible for total disability based on individual unemployability (TDIU),[2] *see* 38 U.S.C. § 4.16(a), the agency's 2006 notification letter noted that it would not "address[] the issue of individual unemployability since [Mr. Moore's] combined evaluation is 100 percent, which is the higher benefit."  J.A. 36.

In May 2011, the agency increased Mr. Moore's disability rating for his service-connected PTSD to 70 percent but denied his claim for an earlier effective date.  On appeal, Mr. Moore explained to the Board that, with respect to his PTSD rating, "a 70 percent evaluation would fully satisfy his appeal."  J.A. 84.  During the Board hearing, he made

---

[2]    TDIU provides an alternative path to a total disability rating; if a veteran's schedular rating is not sufficiently severe to warrant a 100 percent rating but the agency determines that the disability nonetheless prevents the veteran from securing "substantially gainful employment," a total disability rating may be assigned.  38 C.F.R. § 4.16(a).  As provided by the regulation, qualifying disabilities include a single disability that is at least 60 percent disabling or two or more disabilities with one disability rated at 40 percent or more and a combined rating of at least 70 percent.  *Id.*

clear that he was "just disagreeing with the effective date." J.A. 72. Accordingly, the Board, in a 2013 decision, dismissed Mr. Moore's appeal in part, finding that although "a Veteran is presumed to be seeking the maximum possible benefit (which in the case of PTSD is higher than 70 percent," Mr. Moore withdrew his claim of an increased rating for PTSD.

The Board remanded the issue of Mr. Moore's entitlement to an earlier effective date, which was the lone issue relating to his PTSD claim that remained pending. After the agency denied Mr. Moore's claim for an earlier effective date, the Board, in a 2015 decision, concluded that although Mr. Moore argued for an earlier effective date because his PTSD was caused by his 1967 gunshot wounds, he was not entitled to an effective date earlier than the date he first filed a claim for service-connected PTSD, namely April 3, 1995. Mr. Moore did not appeal the 2013 and 2015 decisions, which became final. In August of 2018, Mr. Moore submitted a claim for increased ratings for other specified trauma and a specified related disorder (previously diagnosed as PTSD); later that year, the agency denied his claim.

## II

This appeal arises from the 2018 rating decision denying Mr. Moore's claim for an increased rating related to his PTSD and chiefly concerns whether the Board's prior decisions adjudicated Mr. Moore's entitlement to TDIU based solely on his PTSD and an earlier effective date for his service-connected PTSD. Specifically, the Board concluded that its 2013 decision finally adjudicated Mr. Moore's claim for an increased PTSD rating and that its 2015 decision finally adjudicated Mr. Moore's claim for an earlier effective date that he raised in his 2001 NOD. Because Mr. Moore did not file another claim concerning his PTSD until 2018, the Board concluded that his current claim began in 2018 when the VA received Mr. Moore's claim for an increased

rating for PTSD. The Board denied Mr. Moore's 2018 claim, concluding that, over the relevant period, "the Veteran's acquired psychiatric disorder did not result in total occupational and social impairment" and, thus, "the preponderance of the evidence is against the assignment of an evaluation in excess of the currently assigned 70 percent for [PTSD]." J.A. 133. Addressing Mr. Moore's claim for TDIU based on PTSD, the Board held that because of the relief Mr. Moore already received, his claim for TDIU was moot.

On appeal to the Veterans Court, Mr. Moore, rather than insisting on his entitlement to benefits over the relevant appeal period, argued that he was entitled to benefits based on purportedly unadjudicated claims long predating his 2018 claim. *See Decision*, 2023 WL 1786300, at *3 (noting that Mr. Moore "attempt[ed] to expand the period on appeal to date back to 1997 or even 1968"). Specifically, Mr. Moore argued that the Board erred in concluding his TDIU claim was moot because that claim arose in 1997, and he did not receive special monthly compensation (SMC) under 38 U.S.C. § 1114(l) until 2005. With respect to the earlier effective date for his PTSD rating, Mr. Moore argued that the Board failed to consider his argument that, after the Board's 2001 finding of CUE in his original muscle damage rating, the Board should have also considered his entitlement to service-connection for PTSD when revising the 1969 rating decision.

Addressing Mr. Moore's argument that the Board erred in concluding that his TDIU claim was moot, the Veterans Court echoed the Board's determination that the 2013 Board decision dismissed his claim for an increased rating based on PTSD and explained that this carried the further legal consequence of finally adjudicating the associated TDIU claim. *Id.* at *3–4 (citing *Rice v. Shinseki*, 22 Vet. App. 447, 453 (2009) (holding that entitlement to TDIU is not a separate claim when it arises as part of a claim for benefits for specific conditions)); *see also* J.A. 123.

As for Mr. Moore's claim for an earlier effective date, the Veterans Court explained that "the 2015 Board specifically considered [Mr. Moore's] request for an earlier effective date because his gunshot wound in 1967 caused his PTSD" but nonetheless "denied an effective date for service-connected PTSD before April 1995"; that decision became final when Mr. Moore elected not to appeal. *Decision*, 2023 WL 1786300, at \*3. Accordingly, the Veterans Court affirmed the Board's decision. *Id.* at \*4. Mr. Moore appeals.

DISCUSSION

I

This Court's jurisdiction to review decisions of the Veterans Court is circumscribed by statute. *Steele v. Collins*, 135 F.4th 1353, 1357 (Fed. Cir. 2025). Our review does not extend to questions of fact or applications of law to fact. 38 U.S.C. § 7292(d)(2). But this Court has jurisdiction to "decide all relevant questions of law, including interpreting constitutional and statutory provisions." *Id.* § 7292(d)(1). The question of whether the agency properly bifurcated claims is a question of law. *Harper v. Wilkie*, 30 Vet. App. 356, 359 (2018); *see also Palmatier v. McDonald*, 626 F. App'x 991, 994 (Fed. Cir. 2015) (non-precedential).

II

A

Mr. Moore argues that the Veterans Court violated the *Chenery* doctrine by affirming the Board's dismissal of his PTSD-based TDIU claim on the ground that the Board's 2013 decision dismissing Mr. Moore's previously-raised increased rating claim severed any prior claim stream involving TDIU. Appellant's Br. 18–19 (quoting *Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.")). According to Mr. Moore, the Board made no findings of fact regarding whether its

2013 decision addressed the TDIU rating issue, but, instead, simply found that its 2013 decision "dismissed the issue of [an] increased rating for PTSD." *Id.* at 17–18 (citation omitted). Therefore, by concluding that the 2013 decision severed any prior claim stream involving TDIU, the Veterans Court, in violation of *Chenery*, affirmed the Board's decision based on a finding it never made. For the same reason, Mr. Moore contends that the Veterans Court also exceeded its jurisdiction by finding facts on appeal.

In response, the Secretary contends that the Veterans Court did not violate the *Chenery* doctrine because it made no additional factual findings. Instead, the Secretary argues, the Veterans Court simply applied the well-established legal principle that a claim for TDIU is part of the underlying claim for an increased rating. Therefore, the Secretary argues that the Veterans Court permissibly applied a different legal theory to the Board's existing factual findings. *See Fleshman v. West*, 138 F.3d 1429, 1433 (Fed. Cir. 1998) (noting that under the *Chenery* doctrine, a court may affirm on alternative grounds if the new ground does not involve "a determination or judgment which an administrative agency alone is authorized to make." (citation omitted)).

Mr. Moore, in reply, argues that the general rule invoked by the Secretary does not apply where the agency bifurcates the TDIU claim from the underlying claim for an increased schedular rating. And where the claims are bifurcated, Mr. Moore contends, determining whether the denial of a claim for an increased schedular rating implicitly denies a related claim for TDIU requires fact finding. Mr. Moore contends that, in this case, the agency bifurcated the increased schedular rating and TDIU claims in the 2006 notification letter by indicating that it would not address the issue of TDIU. The Veterans Court, therefore, could not conclude that the 2013 decision finally adjudicated Mr. Moore's TDIU claim without making the factual

finding—in violation of *Chenery*—that the 2013 decision implicitly denied his TDIU claim.

We disagree with Mr. Moore that the 2006 notification letter bifurcated his PTSD-based TDIU claim from his underlying claim for an increased schedular rating. Although Mr. Moore views the *Locklear* case as analogous, the Veterans Court there held that the Board explicitly bifurcated the issues of an increased schedular rating and entitlement to TDIU by adjudicating the increased rating claim while remanding the issue of TDIU back to the agency. *See Locklear v. Shinseki*, 24 Vet. App. 311, 313, 318 (2011). Conversely, here, the 2006 notification letter indicated that the agency rated Mr. Moore's degenerative disc disease as 60 percent disabling but that the agency would not address "the issue of individual unemployability since [Mr. Moore's] combined evaluation is 100 percent, which is the higher benefit." J.A. 36. The 2006 letter did not separate the adjudication of the TDIU issue from the underlying schedular rating issue; instead, it indicated that Mr. Moore was not entitled to TDIU because of the compensation he already received. Rather than putting the issue of TDIU on a separate adjudicative path, the 2006 letter brought the claim streams for both the TDIU and schedular rating issues to an end. *See Deshotel v. Nicholson*, 457 F.3d 1258, 1261 (Fed. Cir. 2006) ("Where the veteran files more than one claim with the [the agency] at the same time, and the [the agency's] decision acts . . . on one of the claims but fails to specifically address the other claim, the second claim is deemed denied, and the appeal period begins to run.").

Additionally, Mr. Moore's argument that the 2006 notification letter bifurcated his PTSD-based TDIU claim from his underlying increased PTSD rating claim lacks support because the letter addresses only his degenerative disc disease and makes no mention of PTSD. Thus, even if the agency had separated the adjudication of Mr. Moore's potential entitlement to TDIU based on his degenerative

disc disease from the underlying schedular rating, nothing in the letter suggests that the agency similarly bifurcated the issue of Mr. Moore's entitlement to PTSD-based TDIU from the underlying claim for an increased schedular rating. Therefore, we reject Mr. Moore's argument that the Secretary bifurcated the adjudication of his claim for PTSD-based TDIU from his underlying claim for an increased schedular rating.

We also disagree with Mr. Moore that the Veterans Court violated the *Chenery* doctrine or engaged in fact finding. We have previously held that a court does not violate the *Chenery* doctrine by applying a different legal framework to facts found by the agency. *See Fleshman*, 138 F.3d at 1433 (finding no *Chenery* violation where the Veterans Court applied "a different legal rubric" because the agency's fact findings "provide[d] the complete factual predicate for [the Veterans Court's] legal conclusion"). In the absence of bifurcation, the issue of TDIU remains part of a veteran's claim for an increased rating. *See Comer v. Peake*, 552 F.3d 1362, 1367 (Fed. Cir. 2009) (noting that "a claim to TDIU benefits is not a free-standing claim"); *Rice*, 22 Vet. App. at 453–54 (holding that "a request for TDIU . . . is not a separate claim for benefits, but rather involves an attempt to obtain an appropriate rating for a disability"). And, as the Board found in its 2013 decision, Mr. Moore withdrew "his claim of an increased rating for PTSD" and narrowed his PTSD-based appeal to just the effective date question by clarifying that "a 70 percent evaluation would fully satisfy his appeal." J.A. 83–84; *see also* J.A. 72 (Moore: "I'm currently satisfied about the 70 percent rating. *I'm just disagreeing with the effective date.*" (emphasis added)). The Board thus dismissed the rating portion of Mr. Moore's appeal. J.A. 84. And the Board's 2021 decision correctly recognized the import of its 2013 decision: "When the Board issued the November 2013 decision dismissing the claim of increased ratings for PTSD, that decision was final. *See* 38 C.F.R. § 3.160(d)." J.A. 124.

Under these circumstances, Mr. Moore's express relin-
quishment of any further adjustment to his PTSD rating
and the Board's subsequent dismissal of that portion of his
appeal necessarily resulted in a final resolution to any
PTSD-related TDIU claim.   *See Deshotel*, 457 F.3d 1261–
62 (holding that a claim does not remain pending even if
not specifically addressed when simultaneously raised
claims have been adjudicated).

While Mr. Moore characterizes the 2013 Board deci-
sion as simply recognizing that he had "withdrawn his re-
quest for a higher *schedular* rating for his PTSD,"
Appellant's Reply at 2 (emphasis added), the Board's find-
ings were not so limited; the Board more broadly found that
Mr. Moore withdrew "his claim of an increased rating for
PTSD."   J.A. 83; *see also* J.A. 84 ("The Veteran has main-
tained that a 70 percent evaluation would *fully satisfy his
appeal*." (emphasis added)); J.A. 124.   That distinction is
significant:  a schedular rating refers to the percentage as-
signed to a specific disability based on its severity, while a
claim for an increased rating can also include entitlement
to TDIU based on the overall impact of service-connected
conditions on a person's ability to work.   *See* 38 C.F.R.
§ 4.16(a) ("*Total disability ratings* for compensation may be
assigned, *where the schedular rating is less than total*,
when the disabled person is . . . unable to secure or follow
a substantially gainful occupation as a result of service-
connected disabilities." (emphases added)).   Thus, the
2013 Board decision determined that Mr. Moore aban-
doned any claim for a higher rating for his service-con-
nected PTSD.   J.A. 83–84.   The 2021 Board decision
recognized this result when defining the relevant appeal
period for Mr. Moore's claims, including his TDIU claim, as
beginning in 2018.  Rather than engaging in additional fact
finding or relying on a separate rationale, the Veterans
Court simply identified a legal consequence of Mr. Moore's
withdrawal of his increased rating claim, namely the with-
drawal of his TDIU claim.   Thus, the Veterans Court

properly reached the conclusion that the 2013 Board decision "severed any prior claim stream that involved TDIU" via the application of well-established legal principles to facts found by the Board. *See Decision*, 2023 WL 1786300, at \*3; *Fleshman*, 138 F.3d at 1433. Accordingly, we conclude that the Veterans Court did not violate the *Chenery* doctrine or find facts in violation of its jurisdictional statute.

B

Mr. Moore also argues that the Veterans Court erred by failing to ensure that the Board addressed the arguments and issues he raised. Specifically, Mr. Moore reads this Court's prior decision in *Bean v. McDonough* as holding that the Board commits reversible error by failing to address an issue or argument raised to the Board, *see* Appellant's Reply at 10 (citing 66 F.4th 979, 989 (Fed. Cir. 2023)), and contends that the Board ignored his argument that because the agency never made a determination regarding his entitlement to TDIU, his TDIU remained pending.

The Secretary contends that the Board addressed Mr. Moore's claim for TDIU by concluding that the 2013 Board finally adjudicated Mr. Moore's claim for an increased rating. Appellee's Br. 14–15 (citing J.A. 124–25).

We agree with the Secretary that the Board did not commit the legal error identified in *Bean*. The *Bean* decision does not stand for the proposition that the Board's failure to address an argument raised by the veteran requires vacatur or reversal; instead, this Court held in *Bean* that the Veterans Court has jurisdiction to review the Board's failure to address a claim properly raised by the veteran. 66 F.4th at 988–89 ("[W]hen a claim is adequately presented to the Board but not addressed by the Board, the Board's disposition of the appeal constitutes a decision . . . that may be appealed to the Veterans Court."). Here, the Board correctly found that its 2013 decision

dismissed, in a final decision, Mr. Moore's claim for an increased PTSD rating, and thus did not fail to adjudicate a properly raised claim. Further, Mr. Moore's argument that the Board in 2013 lacked jurisdiction over the TDIU issue is inconsistent with the principle that a claim for TDIU is part and parcel of the underlying claim for an increased schedular rating such that an appeal of the latter encompasses the former. *See Harper v. Wilkie*, 30 Vet. App. 356, 359–60 (2018); *Andrews v. Nicholson*, 421 F.3d 1278, 1281 (Fed. Cir. 2005) (rejecting an argument that the agency's failure to determine whether a veteran's pleadings raised TDIU should not be considered on a CUE motion because the agency had yet to adjudicate the TDIU claim). Thus, we reject Mr. Moore's argument as inconsistent with precedent. *See Andrews*, 421 F.3d at 1281.

## III

Mr. Moore also argues that the Veterans Court erred by failing to ensure that the Board addressed his argument that the 2015 Board decision did not finally adjudicate his claim for an earlier effective date for service-connected PTSD. Further, Mr. Moore contends that the Board failed to provide notice that the Board's finding of CUE in the 1969 rating decision for muscle damage did not entitle Mr. Moore to compensation for his PTSD caused by his gunshot wounds.

Like the Veterans Court, we disagree with Mr. Moore's reading of the Board decision. Mr. Moore's appeal raises the issue of his entitlement to an earlier effective date for his PTSD, but, as the Board and the Veterans Court concluded, the Board's 2015 decision finally adjudicated that same issue. *See* J.A. 124–25 (concluding that Mr. Moore's claim for an earlier effective date pursuant to his 2001 NOD was "eventually denied in a November 2015 Board decision"); *see also* J.A. 100 (noting that "[t]he Veteran contended during hearing testimony in January 2012 that he sought an earlier effective date for his grant of service

connection for PTSD based on the fact that his PTSD originated with a gunshot wound in 1967" but denying the claim for an earlier effective date). While Mr. Moore argues that his current appeal raises a claim distinct from the one adjudicated in 2015, he instead advances additional arguments for why the Board in 2015 should have adjudicated the effective date issue differently. Thus, Mr. Moore does not identify a pending claim in need of adjudication but, instead, attempts to alter the results of the Board's final determination. We cannot disturb a final decision absent a showing of CUE, s*ee* 38 C.F.R. § 3.105(a) ("Final decisions will be accepted by VA as correct . . . in the absence of clear and unmistakable error."), and Mr. Moore has not alleged CUE in the 2015 decision. *See Decision*, 2023 WL 1786300, at *3; J.A. 125. If Mr. Moore believes that the Board erred in its 2015 decision, he may file a CUE claim to rectify such errors.

Similarly, we reject Mr. Moore's argument that the 2015 denial of his claim for an earlier effective date, as a matter of law, cannot provide notice of the denial of his claim for an earlier effective date based on the finding of CUE in the 1969 decision. The 2015 Board adjudicated a claim for an earlier effective date for his service-connected PTSD. Just because the Board did not expressly reject an argument that Mr. Moore now advances does not mean that the 2015 Board adjudicated a different claim.

## CONCLUSION

We have considered Mr. Moore's other arguments but find them unpersuasive. For the foregoing reasons, the Veterans Court's decision is *affirmed*.

## AFFIRMED